MARTIN L. VAN BUREN v. MAX GLASCO AND CAROLINA
INTERIOR CONTRACTORS, INC.

No. 7526SC193

(Filed 20 August 1975)

1. **Process § 7; Rules of Civil Procedure § 4— individual defendant — substituted service of process — dwelling house or usual place of abode**

    A house in Sanford, N. C. at which a deputy sheriff delivered process to defendant's son qualified as defendant's "dwelling house or usual place of abode" for purposes of substituted service of process within the purview of G.S. 1A-1, Rule 4(j)(1)a where the house was owned by defendant and his wife as tenants by the entirety, his wife and family resided there, and defendant worked in South Carolina but usually visited with his family in the residence in Sanford, N. C. at least two weekends a month, notwithstanding defendant and his wife also owned a house in South Carolina in which defendant resided while working in that state and where his wife and family usually came on those weekends when he was not with them in North Carolina.

2. **Process § 7; Rules of Civil Procedure § 4— individual defendant — substituted service of process — person of suitable age and discretion — 15-year-old boy**

    The trial court properly found that defendant's fifteen-year-old son was a "person of suitable age and discretion" with whom to leave process at defendant's dwelling house or usual place of abode within the meaning of G.S. 1A-1, Rule 4(j)(1)a where a deputy sheriff's return of service indicated that copies of the summons and complaint were left with a person of suitable age and discretion, and defendant offered no evidence that his son lacked the intelligence and discretion ordinarily possessed by a boy of his age.

1

APPEAL by defendant Max Glasco from *Ervin, Judge*. Order entered 19 November 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 8 May 1975.

This is a civil action in which plaintiff seeks an accounting and to recover damages from the individual and the corporate defendants for breach of a contract relating to services performed in this State. The sole question presented by this appeal is whether the court acquired jurisdiction over the person of the individual defendant, Max Glasco.

This action was commenced on 16 August 1973, when the verified complaint was filed and summons was issued. On 21 August 1973 a deputy sheriff of Lee County delivered copies of the summons and complaint to Joel Glasco, the fifteen-year-old son of the individual defendant, Max Glasco, at the residence at Forest Hills, Route 4, Sanford, North Carolina, in which Joel resided with his mother. On 24 September 1973 entry of default was made against Max Glasco, and on 27 September 1973 a judgment by default and inquiry was signed and filed against him.

On 27 February 1974 Max Glasco moved to set aside the entry of default and judgment by default against him on the ground that the court had not acquired jurisdiction over his person in that summons and complaint were not served upon him as required by G.S. 1A-1, Rule 4(j)(1). In support of this motion, Glasco filed with the court on 10 June 1974 an affidavit in which he in substance stated: He is the president and principal shareholder of the corporate defendant, Carolina Interior Contractors, Inc., which ceased doing business in 1972. He individually has transacted no business with plaintiff but defendant corporation has associated plaintiff as a consultant with it on numerous contracts. The agreement sued upon in this action was between plaintiff and the corporate defendant, and plaintiff has been paid a sum previously agreed upon for his services. Further, in the spring of 1972 affiant went to North Myrtle Beach, South Carolina, where he organized and subsequently incorporated a landscaping business. Since that time he has lived at 213 33rd Avenue in that city in property owned by him and his wife. He and his wife, as tenants by the entirety, also own real estate located at Route 4, Forest Hills, in Sanford, North Carolina, where his wife and children resided on 21 August 1973. When he moved to South Carolina to organize his new business, his wife elected to remain in Sanford until the

Van Buren v. Glasco

couple's youngest child, Joel Glasco, born 18 November 1957, could complete his education in the public schools. Affiant has not lived in North Carolina since spring 1972 and was not physically present in North Carolina on 21 August 1973. Since moving to Myrtle Beach, he has returned to North Carolina on weekends to visit his wife and children and has returned on other occasions to confer with his attorneys and accountants in connection with winding up the affairs of Carolina Interior Contractors, Inc. His weekend visits to his family in North Carolina have not averaged more than two weekends per month, and when appellant has not returned to North Carolina for such visits, his family has usually visited with him in South Carolina.

By order filed 19 November 1974 the trial court denied Glasco's motion to set aside the judgment. Included among the court's findings of fact were the following:

"1. This action was instituted by the filing of summons and complaint on the 16th day of August, 1973.

"2. On the 21st day of August, 1973, a Lee County Deputy Sheriff personally delivered and left with Joel Glasco, the son of defendant Max Glasco at Forest Hills, Route 4, Sanford, North Carolina, copies of the summons and complaint herein.

"3. Said deputy sheriff made his return on the summons indicating that copies of said documents were left with a person of suitable age and discretion who resides in the defendant's dwelling house or usual place of abode.

"4. The birth certificate of Joel Glasco which was placed in evidence by defendant Max Glasco, reflects the said Joel Glasco was born on November 18th, 1957.

"5. Although defendant Max Glasco started a new business in North Myrtle Beach, South Carolina, in the spring of 1972 where he regularly worked during the week, said defendant's wife continued to live together with their youngest child, Joel Glasco, at Forest Hills, Route 4, Sanford, North Carolina. No evidence was offered to the effect that said defendant and his wife considered themselves to be separated. Said defendant continued to return to said residence on weekends and his wife and son regularly visited with him in South Carolina.

Van Buren v. Glasco

\*   \*   \*   \*   \*

"7. Counsel for defendant Max Glasco admitted in open court that defendant Max Glasco actually came into possession of the copy of the summons and complaint left with his said son and that the same had been delivered to said defendant's counsel prior to the expiration of the time for filing answer herein."

The trial court concluded as a matter of law:

"1. That Forest Hills, Route 4, Sanford, North Carolina, was on the 21st day of August, 1973, the usual place of abode of defendant Max Glasco within the meaning of Rule 4(j)(1).

"2. That defendant Max Glasco's son, Joel Glasco, was a person of suitable age and discretion within the meaning of Rule 4(j)(1).

"3. That plaintiff obtained valid service of process upon defendant Max Glasco under the provisions of Rule 4(j)(1) and that there is no basis for setting aside the judgment herein on the ground of insufficiency of service of process.

"4. That defendant Max Glasco had actual notice of the pendency of this action and the nature thereof by his personal receipt of copies of the summons and complaint herein and that he had adequate and ample opportunity to file defensive pleadings herein.

"5. That there is no showing upon which the court could justify setting aside the judgment heretofore entered herein."

The court denied defendant Glasco's motion to set aside the judgment by default and inquiry, and defendant Glasco appealed.

*No counsel for plaintiff appellee.*

*Lowry M. Betts for defendant appellant.*

PARKER, Judge.

The right of immediate appeal in this case is given by G.S. 1-277(b). Grounds for personal jurisdiction exist as provided in G.S. 1-75.4, and the determination of this appeal de-

pends upon whether service of process was made in the manner
required by G.S. 1A-1, Rule 4(j)(1)a. In pertinent part that
Rule provides that service upon a natural person not under dis-
ability may be made

> "[b]y delivering a copy of the summons and of the
> complaint to him or by leaving copies thereof at the defend-
> ant's dwelling house or usual place of abode with some per-
> son of suitable age and discretion then residing therein."

Appellant contends, first, that the house at which the deputy
sheriff left the copies of the summons and complaint was not
his "dwelling house or usual place of abode," and, second, that
his fifteen-year-old son was not a "person of suitable age and
discretion." We do not agree with either contention.

[1]    Although there have been many decisions concerning what
is a "defendant's dwelling house or usual place of abode" as that
phrase is employed in a rule or statute similar to our Rule
4(j)(1)a, it is difficult to derive a satisfactory all-inclusive defi-
nition from the decided cases. *See* Annot., 32 A.L.R. 3d 112
(1970). "The decisions interpreting the term indicate that no
hard-and-fast definition can be laid down, but that what is or is
not a party's 'dwelling house or usual place of abode' within
the meaning of the rule or statute is a question to be determined
on the facts of the particular case." 2 Moore's Federal Practice
(2d Ed. 1974) ¶ 4.11[2], p. 1039. In the present case appellant's
own affidavit establishes that the house in Sanford, N. C., where
the deputy sheriff delivered the papers to appellant's son, was
owned by appellant and his wife as tenants by the entirety, his
wife and family resided there, and appellant himself, although
working in South Carolina, regularly returned thereto on a
frequently recurring basis. It would appear from the facts
stated in his affidavit that the occasions on which appellant was
physicially present at his Sanford residence occurred with such
frequency and regularity that normally he would be present
therein at least twice during any 30-day period in which he might
be called upon to file an answer under Rule 12. Under these facts
it is our opinion that the Sanford residence qualified as appel-
lant's "dwelling house or usual place of abode" within the mean-
ing of Rule 4(j)(1)a. That appellant and his wife also owned a
house in South Carolina, in which he resided while working in
that State and where his wife and family usually came on those
weekends when he was not with them in North Carolina, does
not compel a holding that the North Carolina residence could

not be his "dwelling house or usual place of abode." Indeed, because of his family's continued occupancy of the North Carolina home and because of his regular and frequent return thereto, it would appear that appellant had a closer and more enduring connection with his North Carolina residence than he had with the South Carolina house. Certainly, when all of the circumstances are considered, his relationship and connection with the North Carolina dwelling were such that there was a reasonable probability that substitute service of process at that dwelling would, as it in fact here did, inform him of the proceedings against him in apt time to permit him to assert in timely fashion such defenses as he might have. Moreover, as one authority has pointed out in discussing the cognate Federal Rule, in a highly mobile society such as ours, "it is unrealistic to interpret Rule 4(d)(1) so that the person to be served only has one dwelling house or usual place of abode at which process may be left." 4 Wright and Miller, Federal Practice and Procedure (1969), § 1096, p. 368. However, we are not called upon to decide in this case whether appellant's South Carolina house might simultaneously qualify along with his North Carolina home as his "dwelling house or usual place of abode" for purposes of substituted service of process. We need only decide, as we do, that the North Carolina house so qualified. Although, as above noted, each case necessarily rests upon its own particular facts, our decision here finds support in *Karlsson v. Rabinowitz*, 318 F. 2d 666 (4th Cir. 1963).

[2] We next examine appellant's contention that his fifteen-year-old son was not a "person of suitable age and discretion" for purposes of Rule 4(j)(1)a. In this connection, we note that no exception was taken to the trial court's finding of fact number 3 in which the court found that the deputy sheriff made his return on the summons indicating that copies of the summons and complaint were left with "a person of suitable age and discretion who resides in the defendant's dwelling house or usual place of abode."

> "When the return shows legal service by an authorized officer, nothing else appearing, the law presumes service. The service is deemed established unless, upon motion in the cause, the legal presumption is rebutted by evidence upon which a finding of nonservice is properly based. . . . Upon hearing such motion, the burden of proof is upon the party who seeks to set aside the officer's return

or the judgment based thereon to establish nonservice as a fact; and, notwithstanding positive evidence of nonservice, *the officer's return* is evidence upon which the court *may* base a finding that service was made as shown by the return." *Harrington v. Rice,* 245 N.C. 640, 642, 97 S.E. 2d 239, 241 (1957).

In the present case the only evidence presented by appellant to show that his son was not a "person of suitable age and discretion" was his son's birth certificate which showed that he was born on 18 November 1957, thus making him fifteen years and nine months old at the time the papers were delivered to him by the deputy sheriff on 21 August 1973. No evidence was presented and no contention is made that appellant's son lacked the intelligence and discretion ordinarily possessed by a boy of his age. Appellant contends, however, that a fifteen-year-old boy is, as a matter of law, not a "person of suitable age and discretion" within Rule 4(j)(1)a. We do not agree. Similar contentions were made and rejected in *Day v. United Securities Corporation,* 272 A. 2d 448 (D.C. Ct. App. 1970); *Holmen v. Miller,* 296 Minn. 99, 206 N.W. 2d 916 (1973); and *Temple v. Norris,* 53 Minn. 286, 55 N.W. 133 (1893). In *Holmen v. Miller, supra,* the Supreme Court of Minnesota was called upon to determine whether a thirteen-year-old daughter was a "person of suitable age and discretion" for purposes of substituted service of process upon her father. In holding the service valid in that case, the court said:

"It may well be that a 13-year-old, or for that matter a person of any age, is not a person of suitable age and discretion for the purpose of the rule. However, the burden is upon the defendant, after a proper motion to the court, to prove that fact. The sheriff's certificate in this case contained the statement that Jean Miller, contestee's daughter, was a person of suitable age and discretion. We have held that the sheriff's certificate is prima facie evidence of the allegations it contains and that a defendant has the burden of proving otherwise." 296 Minn. at 104, 206 N.W. 2d at 919-20.

The same rule applies in this State. *Harrington v. Rice, supra.* Appellant failed to carry the burden of showing that his son was not a person of suitable age and discretion for purposes of Rule 4(j)(1)a.

The order appealed from is

Affirmed.

Judges BRITT and VAUGHN concur.