919 P.2d 1209 (1996)
129 Wash.2d 601
Pamela SHELDON, Respondent,
v.
Francine FETTIG and "John Doe" Fettig, Wife and Husband, and the Marital Community Property Composed Thereof, Petitioners.
No. 63082-8.
Supreme Court of Washington, En Banc.
Argued March 28, 1996.
Decided August 1, 1996.
Reed McClure by William R. Hickman, Seattle; and Talbott, Simpson, Gibson, Davis & Bruns, P.S., by Scott A. Bruns, Yakima, for petitioners.
Morris & Church, by Frank E. Morris and Shirley Bluhm, Olympia, for respondent.
SANDERS, Justice.
The question in this case is the sufficiency of service of process where plaintiff attempted service of process by leaving a copy of the summons and complaint with defendant's brother at her parents' home. The only issue *1210 is whether the place where the summons was left constitutes defendant's house of usual abode. Under these facts, we conclude that service complied with RCW 4.28.080(15) and accordingly affirm the trial court and the Court of Appeals.

FACTS
On July 15, 1989, petitioner Francine Fettig and respondent Pamela Sheldon were involved in a car accident in Grant County allegedly caused by Ms. Fettig's negligence. On July 9, 1992, six days before the statute of limitations would have run, Ms. Sheldon filed suit for damages in Grant County Superior Court. She served process by sending a professional process server to the home of Ms. Fettig's parents in Seattle where a copy of the complaint and summons was left with Ms. Fettig's brother.
On December 7, 1991, eight months before process was served, Ms. Fettig had relocated to Chicago to begin a training program with United Airlines to work as a flight attendant. Prior to moving, she had lived on her own for two to three years in Seattle and then Renton. Immediately prior to leaving for Chicago, Ms. Fettig gave up her Renton apartment and moved back into her parents' Seattle home where she stayed for at least two months.
Ms. Fettig repeatedly used her parents' address as the place where she could be contacted before, during, and after this two-month period. Four months before her departure for Chicago, Ms. Fettig was cited for speeding and gave her parents' Seattle address as her own. Upon moving back into her parents' home, she changed her address with the post office giving her parents' address as her own and continued having all her mail sent there for at least seven weeks after moving to Chicago. Two weeks after Ms. Fettig went to Chicago, she registered to vote in Washington swearing that she was a Washington resident living at her parents' address. Ms. Fettig's car was registered at the same address. When she moved to Chicago she left her car with her father and gave him power of attorney to sell it. The address on the car insurance was changed to her parents' address and kept valid until the car was sold. When the car was sold, one and a half months prior to service of process, the bill of sale filed with the Department of Licensing listed the Seattle Fettig home as Ms. Fettig's address.
Upon moving to Chicago, Ms. Fettig left much of her personal belongings at her parents' house all of which were allegedly boxed up. She also left an inactive savings account in Seattle with a balance less than $20.
Upon completion of a seven-week flight attendant training program in Chicago, Ms. Fettig took an apartment there with two other flight attendants. They signed a 13-month lease and moved in eight months before service was attempted. Ms. Fettig then had all her mail sent to Chicago, joined a health club, and opened a checking account. However, she never got an Illinois driver's license but rather kept her Washington license which used her former Renton address. Further, she never registered to vote in Chicago and remained registered in Seattle.
As a beginning flight attendant, Ms. Fettig was without a route and served on an on-call basis. She had blocks of time off, and, like her roommates, frequently flew home. The fact that she was frequently home is confirmed by her father who stated that during August, the month service was made, Ms. Fettig spent perhaps four or five days at home and five or six the month before. Ms. Fettig was also there when the office of Ms. Sheldon's attorney first called the Fettig home seeking Ms. Fettig's insurance information. However, she had no designated bedroom at her parents' home and further contends in her deposition the next door neighbor became her boyfriend in July, a month before service of process, and that she always slept at his house from then on when in Seattle.
Ms. Sheldon's attorney first contacted Ms. Fettig by calling her at the Fettig family home in June, less than two months before process was served, using the phone number supplied by the insurer of the car driven by Ms. Fettig at the time of the accident. (It was a friend's car.) Ms. Fettig's father took the call during which Ms. Fettig, who was *1211 at the Seattle house at the time, could be heard by the attorney conversing in the background. On the same day, Ms. Sheldon's attorney sent Ms. Fettig a letter to her parents' address and received a response from her within four days.
On August 7, 1992, Ms. Sheldon sent a professional process server to the Fettig family home. Ms. Fettig was reportedly not there and the server left the complaint and summons with Ms. Fettig's brother pursuant to the substitute service of process statute. RCW 4.28.080(15). No evidence was given to indicate where Ms. Fettig was on August 7, 1992, the day process was served.
Twelve days after service was made, Ms. Fettig's attorney gave notice of special appearance. On September 14, 1992, Ms. Fettig served an answer to the complaint asserting, as an affirmative defense, that Ms. Sheldon had failed to effect proper service of process.
After the statute of limitations and the 90-day extension period ran, Ms. Fettig moved for summary judgment on the grounds that the court lacked jurisdiction because service of process was insufficient. Ms. Fettig asserted she in fact lived in Chicago, her parents' home was not her house of usual abode, and, accordingly, process left at her parents' house was necessarily defective. The trial court denied the motion and ordered that the defense of improper service of process be stricken. The trial court reasoned at the time of service Ms. Fettig was a Washington State resident; at the time of service, Ms. Fettig maintained two "personal abodes," one in Chicago and one at her parents' home in Seattle; and Ms. Sheldon perfected service.
Ms. Fettig sought discretionary review by the Court of Appeals which granted review and affirmed. Sheldon v. Fettig, 77 Wash. App. 775, 893 P.2d 1136, review denied, 127 Wash.2d 1016, 904 P.2d 300 (1995). She then petitioned this court for review and review was granted. She contends that service did not comply with RCW 4.28.080(15) because her parents' home is not her house of usual abode. She does not contest that she is a Washington State resident.

SUFFICIENCY OF SERVICE OF PROCESS
The issue here is whether the Fettig family home was Ms. Fettig's house of usual abode for substitute service of process pursuant to RCW 4.28.080(15). We conclude that it was and that this service of process was sufficient.
Substitute service of process is effective when (1) a copy of the summons is left at defendant's house of usual abode, (2) with some person of suitable age and discretion, (3) then resident therein. RCW 4.28.080(15).
In interpreting substitute service of process statutes, strict construction was once the guiding principle of statutory construction. See Muncie v. Westcraft Corp., 58 Wash.2d 36, 38, 360 P.2d 744 (1961). However, more recently, we have applied liberal construction to substitute service of process statutes in order to effectuate the purpose of the statute while adhering to its spirit and intent.
For example, in Martin v. Meier, 111 Wash.2d 471, 760 P.2d 925 (1988) the issue was whether a defendant was properly served under the motorist statute. Such service is statutorily permitted only when the defendant "departs from this state." RCW 46.64.040. The defendant in Martin had not left the state although plaintiff was unable to locate him. This court liberally construed the term and upheld the sufficiency of service of process. In doing so, the term "departs" was interpreted by looking at the underlying purpose of the motorist statute which is to provide a method for serving motorists who cannot be found in the State.
In Wichert v. Cardwell, 117 Wash.2d 148, 812 P.2d 858 (1991), we used liberal construction in interpreting the term "then resident therein" in the substitute service of process statute noting that strict construction "`has been the object of a great deal of criticism in modern times.'" Id. at 152, 155, 812 P.2d 858 (quoting 3 Norman J. Singer, Statutory Construction § 61.04 (4th ed. 1986)). In Wichert, service was left at defendant's home with his adult stepdaughter who happened to be staying the night while the parents were away. The adult daughter, however, lived elsewhere, was self-supporting, and had no *1212 personal possessions at the parental house. Wichert, 117 Wash.2d at 150, 812 P.2d 858. We focused on the "spirit and intent of the statute" rather than "the literal letter of the law" and stated that the term should be defined so as to uphold the underlying purpose of the statute. Id. at 151, 812 P.2d 858. We held the dual purpose of the statute is to (1) provide means to serve defendants in a fashion reasonably calculated to accomplish notice and (2) allow injured parties a reasonable means to serve defendants. Wichert, 117 Wash.2d at 151-52, 812 P.2d 858. The court found an adult family member who was in sole control of the home while its inhabitants were away would likely present the papers to defendant. Id. at 152, 812 P.2d 858. Because the underlying rationale was thus met, the court held that the daughter fit within the statutory definition of "then resident therein." Id. at 153, 812 P.2d 858.
In Martin v. Triol, 121 Wash.2d 135, 847 P.2d 471 (1993) we also applied liberal construction. The issue there was whether defendant could be served under the motorist statute during the 90-day tolling period following the three-year period allowed in the statute. RCW 46.64.040. The motorist statute only authorizes service for three years following an accident. Plaintiff attempted service within 90 days after expiration of the three years. In a strict reading, plaintiff failed to serve within three years. However, the court, mindful that the civil rules are meant to minimize miscarriages of justice on procedural grounds, stated "`we do not apply a strict construction ... [r]ather, we so construe the statute as to give meaning to its spirit and purpose, guided by the principles of due process....'" Triol, 121 Wash.2d at 145, 847 P.2d 471 (quoting Wichert, 117 Wash.2d at 156, 812 P.2d 858). The court defined the three-year period in which service could be made as three years plus the 90-day tolling period, and found service sufficient.
We also note many sister jurisdictions follow a rule of liberal construction in interpreting substitute service of process statutes when actual notice is received. See, e.g., Larson v. Hendrickson, 394 N.W.2d 524, 526 (Minn.Ct.App.1986); Lavey v. Lavey, 551 A.2d 692 (R.I.1988); Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir.1963); Plonski v. Halloran, 36 Conn.Supp. 335, 337, 420 A.2d 117 (1980) (statutes governing substituted service should be liberally construed in those cases in which the defendant received actual notice). See generally Allen E. Korpela, Annotation, Construction of Phrase "Usual Place of Abode," or Similar Terms Referring to Abode, Residence, or Domicil, as Used in Statutes Relating to Service of Process, 32 A.L.R.3d, 112, 124-25 (1970).
We therefore conclude "house of [defendant's] usual abode" in RCW 4.28.080(15) is to be liberally construed to effectuate service and uphold jurisdiction of the court. This is consistent with our procedural rules in (1) RCW 1.12.010, which mandates that "[t]he provisions of this code shall be liberally construed, and shall not be limited by any rule of strict construction"; and (2) CR 1, which states the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action," which promotes a policy to decide cases on their merits. Indeed, "`[m]odern rules of procedure are intended to allow the court to reach the merits, as opposed to disposition on technical niceties.'" Carle v. Earth Stove, Inc., 35 Wash.App. 904, 908, 670 P.2d 1086 (1983) (quoting Fox v. Sackman, 22 Wash.App. 707, 709, 591 P.2d 855 (1979)).
Moreover, the substitute service of process statute is designed to allow injured parties a reasonable means to serve defendants. Wichert, 117 Wash.2d at 151-52, 812 P.2d 858. Our holding here is consistent with this purpose. Finally, our holding well exceeds the constitutional due process requirements set out in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").
Applying our holding here, we note that there is no hard and fast definition of the term "house of usual abode." See Korpela, Annotation, 32 A.L.R.3d at 127. The underlying purpose of RCW 4.28.080(15) is to provide a means to serve defendants in a fashion reasonably calculated to accomplish *1213 notice. Wichert, 117 Wash.2d at 151-52, 812 P.2d 858. With this purpose in mind, we approve the reasoning of the Court of Appeals which stated:
The term "usual place of abode" is used in the statute because it is the place at which the defendant is most likely to receive notice of the pendency of a suit.
....
... "[U]sual place of abode" must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear.
Sheldon v. Fettig, 77 Wash.App. 775, 781, 893 P.2d 1136 (quoting Thoenes v. Tatro, 270 Or. 775, 529 P.2d 912 (1974)), review granted, 127 Wash.2d 1016, 904 P.2d 300 (1995).
Thus, the inquiry here is whether the Fettig family home was a center of domestic activity for Ms. Fettig where she would most likely receive notice of the pendency of a suit if left with a family member. See Black's Law Dictionary 1544 (6th ed. 1990) (one definition of usual place of abode is the "place where [a] person would most likely have knowledge of service of process....").
Since Ms. Fettig used the family home for so many of the indicia of one's center of domestic activity, it is fair to conclude it is a center of her domestic activity. She told the government to find her there if enecessary for voting purposes, on her car registration, on the car's bill of sale, and on her speeding ticket. She told her car insurer that that was her address. She returned home frequently when not in flight and was even there when Ms. Sheldon's attorney called. When Ms. Sheldon's attorney sent correspondence there, a response was immediately given.
Also the family home was the place where Ms. Fettig was most likely to receive notice of the pendency of a suit. This conclusion is drawn from the facts of this case although we could well imagine fact patterns in which serving a defendant at her parents' when she lives elsewhere would not constitute sufficient service of process. See, e.g., Lepeska v. Farley, 67 Wash.App. 548, 833 P.2d 437 (1992); Thoenes v. Tatro, 270 Or. 775, 529 P.2d 912 (1974). However, defendant Fettig's father had just done business for her under a power of attorney, was active in negotiating on her behalf in the matter at hand with the insurer and with Ms. Sheldon's attorney, and was clearly looking out for her interests to the extent that it was most likely that she would promptly receive notice if the summons were left there.
The trial court reasoned that Ms. Fettig maintained two places of usual abode. While we think that most people generally maintain only one house of usual abode for service of process purposes, we recognize under certain circumstances a defendant can maintain more than one house of usual abode. See Van Buren v. Glasco, 27 N.C.App. 1, 217 S.E.2d 579, 91 A.L.R.3d 820 (1975) (holding that defendant working and spending the work week in South Carolina also maintained a place of usual abode amenable to substitute service in North Carolina where his wife and family lived and where he spent the weekends), overruled on other grounds in Love v. Moore, 305 N.C. 575, 291 S.E.2d 141 (1982). In so holding, courts have reasoned that "[i]n a highly mobile society it is unrealistic to interpret [the substitute service statute] as mandating service at only one location where, in fact, a defendant maintains several dwelling places." Karlin v. Avis, 326 F.Supp. 1325, 1329 (E.D.N.Y.1971).
Ms. Fettig contends it is impossible for a person to have two houses of usual abode; however, no case cited to us has involved facts warranting such a finding. Dolan v. Baldridge, 165 Wash. 69, 74, 4 P.2d 871 (1931), relied upon by Ms. Fettig, involved a defendant who had moved from Spokane to Seattle and service of process was later left at his vacated house in Spokane. In Dolan we did not reach the issue whether a defendant could maintain two houses of usual abode because we held that the Spokane house clearly was not a house of usual abode.
Ms. Fettig, working as a flight attendant, constantly jetting across the country, is a quintessential example of a highly mobile person splitting her time between two places, Seattle and Chicago. She maintained two *1214 places of usual abode, one at her family home in Seattle and one at her flat in Chicago.

CONCLUSION
We hold the term "house of [defendant's] usual abode" in RCW 4.28.080(15) may be liberally construed to effectuate service and uphold jurisdiction. We also hold that in appropriate circumstances a defendant may maintain more than one house of usual abode if each is a center of domestic activity where it would be most likely that defendant would promptly receive notice if the summons were left there. We conclude Ms. Fettig's family home in Seattle constituted such a center of domestic activity, where she in fact received actual notice. Accordingly, service of process was sufficient and the case will be heard on the merits.
The Court of Appeals is affirmed and this matter is remanded for further proceedings. Respondent shall recover her costs on appeal.
DOLLIVER, SMITH, GUY and JOHNSON, JJ., concur.
TALMADGE, J., dissents.
TALMADGE, Justice (dissenting).
In recent opinions, we have struggled with issues relating to service of process, lurching between liberal and stringent interpretations of statutes and rules without a firm anchor in principle. By adopting here a liberal construction of the substituted service of process statute, the majority injects further confusion into our already chaotic jurisprudence.
The defendant, Francine Fettig, was a flight attendant with a leased apartment in Chicago who no longer resided with her parents, when the process server left process with her 12-year-old brother at her parents' home in Seattle. The majority finds RCW 4.28.080(15), which requires process be served at the defendant's "usual abode" on "some person of suitable age and discretion then resident therein," to be satisfied. I cannot agree.
The accident prompting this action took place in Grant County on July 25, 1989. Fettig lived in Burien and Renton while working in Issaquah from that time until the fall of 1991. Fettig resided in her parents' home in October-November of 1991, but she moved to Chicago in December 1991 to begin training by United Airlines as a flight attendant. Fettig, along with other flight attendants, leased an apartment in Chicago on February 1, 1992. Fettig's mailing address was in Chicago. She had her checking account, bank cards, and health club membership in that city.
Sheldon's complaint was filed on July 9, 1992, and was left on August 7, 1992, at Fettig's parents' home with her 12-year-old brother. A notice of appearance by Fettig's counsel, mailed on August 20, 1992, notified Sheldon sufficiency of process was an issue. Fettig's answer, asserting insufficiency of process, was filed on September 15, 1992. As the 90-day period of RCW 4.16.170 did not expire until October 10, 1992, Sheldon had approximately 30 days in which to effectuate personal service on Fettig, to serve the Secretary of State under the nonresident motorist statute, RCW 46.64.040, or to begin service by publication, RCW 4.28.100. Sheldon, shunning these methods for service of process, instead relied on the service on Fettig's 12-year-old brother.
RCW 4.28.080(15) provides that to accomplish service of process, a copy of the summons must be served on the defendant personally, "or by leaving a copy of the summons at the house of his usual abode with some person of suitable age and discretion then resident therein." Traditionally, this Court has applied a strict construction to substituted service of process statutes because they are in derogation of the common law. Muncie v. Westcraft Corp., 58 Wash.2d 36, 38, 360 P.2d 744 (1961). A recent example of strict construction is Union Bay Preservation Coalition v. Cosmos Dev. and Admin. Corp., 127 Wash.2d 614, 902 P.2d 1247 (1995), where this Court strictly construed provisions of the Administrative Procedures Act (APA) pertaining to service of notices of appeal, requiring service of the notice of appeal on the parties, as opposed to their counsel of record. Similarly, in Weiss v. Glemp, 127 Wash.2d 726, 903 P.2d 455 *1215 (1995), we rigorously construed the provisions of RCW 4.28.080(15) to hold leaving a summons on a window sill of a religious rectory when a Polish cardinal was in Seattle for a visit did not constitute sufficient service of process, particularly insofar as the process server did not deliver the summons to Cardinal Glemp personally, or leave it with anyone of suitable age and discretion where Glemp was staying. Weiss, 127 Wash.2d at 731, 903 P.2d 455.
Ignoring Union Bay and Weiss, and relying on an earlier case, Wichert v. Cardwell, 117 Wash.2d 148, 812 P.2d 858 (1991), the majority gives a liberal construction to RCW 4.28.080(15). In Wichert, we held where the defendant's adult stepdaughter happened to be staying overnight in her parents' home, process left for her at her parents' home would constitute appropriate service upon a person "then resident therein" within the meaning of RCW 4.28.080(15). The Court broadly construed the notion of a person "then resident therein," in deciding the case. The Wichert court, however, did not decide the question of whether a strict or liberal construction of RCW 4.28.080 was invariably required, stating: "Arguably the rule of liberal construction applies to the present statute, RCW 4.28.080, but the matter is not briefed and we express no opinion thereon." Wichert, 117 Wash.2d at 154, 812 P.2d 858. The Wichert majority also noted the purpose of service of process is to provide due process and, specifically, notice to the defendant that an action has been commenced. The Court looked to whether the method of service employed was reasonably calculated to provide notice to the defendant. Wichert, 117 Wash.2d at 151-52, 812 P.2d 858.
In Weiss, however, we rejected the fundamental premise of Wichert when we held window sill service was inadequate even though it was reasonably calculated to provide notice to Cardinal Glemp, stating:
there is a difference between constitutionally adequate service and service required by the statute: "[B]eyond due process [requirements], statutory service requirements must be complied with in order the for the court to finally adjudicate the dispute between the parties." Thayer [v. Edmonds], 8 Wash.App. [36] at 40 [503 P.2d 1110 (1972)].
Weiss, 127 Wash.2d at 734, 903 P.2d 455. Although service may reasonably be calculated to give notice to the defendant, and, by happenstance, the defendant actually may obtain notice of the commencement of the lawsuit, that is not enough. The touchstone for service is, as we stated in Weiss, whether the statute itself has been complied with. In this case, Sheldon did not comply with the statute in attempting service of process.
In addressing the question of whether RCW 4.28.080(15) has been satisfied, we must look to the two components of the statute to determine if service of process has been accomplished. First, process must be left with someone of suitable age and discretion then in residence. Weiss, 127 Wash.2d at 731, 903 P.2d 455; Wichert, 117 Wash.2d at 150, 812 P.2d 858. In the present case, the process server left process with Fettig's 12-year-old brother. A 12-year-old may not be someone of suitable age and discretion for purposes of RCW 4.28.080(15). Ironically, as noted in Wichert, the original statute upon which RCW 4.28.080(15) is based provided a person had to be above the age of 14 years in order to be of "suitable age and discretion" for service of process. Wichert, 117 Wash.2d at 154, 812 P.2d 858. Because Fettig did not raise the question of suitable age and discretion for purposes of RCW 4.28.080(15), however, we may not reach this issue. In re F.D. Processing, Inc., 119 Wash.2d 452, 455-56, 832 P.2d 1303 (1992).
Second, RCW 4.28.080(15) requires service of process to take place at the defendant's "house of ... usual abode." The trial court held Fettig had two usual houses of abode, and consequently service of process at her parents' home was appropriate. The majority agrees.
In prior cases, we have construed the term "house of ... usual abode" to mean the place where the defendant was actually living at the time service of process was accomplished. In Dolan v. Baldridge, 165 Wash. 69, 4 P.2d 871 (1931), the defendant, a bank examiner, moved his family permanently from Spokane to Seattle. His wife subsequently returned to the former home in Spokane to arrange *1216 for the shipping of the family's furniture. While there, the plaintiff served her, asserting the Spokane home remained the husband's house of usual abode. We disagreed, holding because the defendant was living in Seattle and not in Spokane, service of process was insufficient. Spokane no longer was the place the defendant was actually living.
A per curiam opinion of Division One of the Court of Appeals gave the statute a similar reading. In Lepeska v. Farley, 67 Wash.App. 548, 833 P.2d 437 (1992), the defendant's mother was served at her residence in Woodinville. The defendant had his own residence in Burien. The Court of Appeals stated:
Substitute service was attempted on Farley at his parents' home. While Farley may or may not have been living with his parents 3 years earlier when he provided the investigating officer with that address, he avers he was not living there at the time of service. According to his affidavit, he did not live with his parents, but maintained his own household in Burien, near his job. His affidavit also states that during the summer months of 1991, he was on the road with his summer job.
Under Washington case law, service on Farley at his parents' home, when he maintained his own separate home, fails to comply with the substitute service statute.
Lepeska, 67 Wash.App. at 551, 833 P.2d 437.
Many jurisdictions follow the Dolan rule that the defendant must be actually living at the place where service is attempted in order to comply with the statute on substituted service of process: "We agree that constitutional due process notice requires that substituted service at the defendant's `usual place of abode' must be at the place where the defendant normally actually resides so that service will be `substantially ... likely to bring home notice' to the party affected." Bowen v. Graham, 140 Ariz. 593, 597, 684 P.2d 165, 169 (Ariz.App.1984). See also Peterson v. Eishen, 495 N.W.2d 223, 225 (Minn. App.1993), aff'd, 512 N.W.2d 338 (Minn.1994); Alpaugh v. Moore, 568 So.2d 291, 293 (Miss. 1990); Neher v. District Court for the Fourth Judicial Dist., 161 Colo. 445, 422 P.2d 627, 628 (1967); State ex rel. Merritt v. Heffernan, 142 Fla. 496, 195 So. 145, 147, 127 A.L.R. 1263 (1940).
The majority's disposition of this case effectively rewrites RCW 4.28.080(15) with respect to the meaning of a person's "house of... usual abode." The operative language is stated in the singular; the statute by its plain language does not contemplate more than one house of usual abode. Yet the majority's interpretation of that language is "house of ... usual abode and one or more other places where the defendant may be frequently found." Perhaps one day the Legislature will agree with the majority and amend RCW 4.28.080(15) to reflect the added wording. Until that day, I prefer to interpret the statute precisely as the Legislature wrote it in 1893 and has left undisturbed since. Laws of 1893, ch. 127, § 7.
The majority cites two cases allegedly approving amenability to substituted service of process at more than one house of usual abode: Van Buren v. Glasco, 27 N.C.App. 1, 217 S.E.2d 579, 91 A.L.R.3d 820 (1975), and Karlin v. Avis, 326 F.Supp. 1325 (E.D.N.Y. 1971). The Van Buren court upheld substitute service of process in North Carolina on a defendant who worked in South Carolina during the week, but usually returned each weekend to where his wife and family actually lived in North Carolina. The court expressly refused, however, to decide there may be more than one usual place of abode for service of process: "However, we are not called upon to decide in this case whether appellant's South Carolina house might simultaneously qualify along with his North Carolina home as his `dwelling house or usual place of abode' for purposes of substituted service of process. We need only decide, as we do, that the North Carolina house so qualified." Van Buren, 217 S.E.2d at 582-83. Thus, by its very language, Van Buren is not authority for the proposition that there may be more than one house of usual abode.
Karlin, the second case the majority cites, paraphrases from 4A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1096, at 79-80 (2d ed. 1987): "In a highly mobile and affluent society, it is unrealistic to interpret Rule 4(d)(1) so that the person to be served has only one dwelling house or usual place of abode at *1217 which process may be left." Karlin, 326 F.Supp. at 1329. Karlin approved substituted service of process on the college-age son of defendant Avis, who was staying in a New York apartment Avis maintained for his occasional visits to New York. His actual residence was in Michigan. The district court, interpreting New York law, held it would be "highly unrealistic" to interpret the substituted service of process rule as mandating service at only one location. The court concluded Avis's New York apartment was a dwelling place, and that he was amenable to service there. Id. at 1329-30.
However, there is some question as to whether Karlin correctly interpreted New York's substituted service law. One court observed, "The New York Court of Appeals has implicitly rejected the holding in Karlin." National Dev. Co. v. Triad Holding Corp., 131 F.R.D. 408, 412 n. 6 (S.D.N.Y.1990), aff'd, 930 F.2d 253, cert. denied, 502 U.S. 968, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991). In Mangold v. Neuman, 57 N.Y.2d 627, 439 N.E.2d 867, 868, 454 N.Y.S.2d 58 (N.Y.1982), New York's highest court, considering a fact pattern virtually identical to Karlin, declined to disturb a determination by the lower courts that a hotel where defendant stayed occasionally in connection with her business activities was not a residence for purposes of New York's substituted service statute. See ITC Entertainment, Ltd. v. Nelson Film Partners, 714 F.2d 217, 221 n. 3 (2d Cir.1983) (recognizing Mangold's implicit disagreement with Karlin). The New York Court of Appeals is a weightier authority on questions of New York law than a federal district court interpreting New York law.
Further, the mobility of potential defendants is not a factor and should not alter our reading of RCW 4.28.080. The Supreme Court of New Jersey noted 97 years ago that "many persons have several residences, which they permanently maintain, occupying one at one period of the year and another at another period." Mygatt v. Coe, 63 N.J.L. 510, 512, 44 A. 198, 199 (N.J.Sup.1899). In construing New Jersey's substituted service of process statute, which prescribed that a copy of the writ "shall be served upon the defendant in person or left at his dwelling-house or usual place of abode" (id. at 511, 44 A. 198), after noting a person may have more than one residence, invalidated the service on the defendant because "a summons must be served at the dwelling-house in which the defendant is living at the time when the service is made." Id. at 512, 44 A. 198.
The two cases the majority cites to support the proposition there can be two usual houses of abode for purposes of substituted service of process are of dubious authority. For guidance on this issue, we should rely on our own state statute and our own case law.
The statute and our case law are clear: the house of usual abode is where the defendant was actually living at the time of service of process. In the present case, Fettig was not actually living at her parents' home at the time of service of process. She was only an occasional visitor to her parents' home. She was actually living in Chicago. Although she continued to give her parents' address as an address for her driver's license and voting in Washington, this is not enough to make her parents' home the house of her "usual abode" for purposes of substituted service of process. Many adult children in school continue to maintain their parents' home address for purposes of certain government services while they are away at school. This does not mean the adult child is amenable to substituted service of process in the parents' home. While the home may be the adult child's domicile, for purposes of substituted service of process, "usual place of abode" has a narrower meaning than domicile. Bowen v. Graham, 140 Ariz. 593, 684 P.2d 165, 168 (1984); Neher, 422 P.2d at 628 (usual place of abode not necessarily synonymous with domicile); Eckman v. Grear, 14 N.J. Misc. 807, 187 A. 556, 557-58 (1936) ("usual place of abode" has different meaning from "residence" and "domicile" when applied to service of process); Berryhill v. Sepp, 106 Minn. 458, 119 N.W. 404, 405 (1909) ("usual place of abode" much more restricted term than "residence").
Fettig actually lived in Chicago, where she had an apartment with other flight attendants, and other indicia of residence such as a checking account, bank cards, health club membership and the like. Fettig claims she came back to Seattle not more than twice a month. Fettig's father believes during the month of August, the month in which service was accomplished, she spent no more than *1218 four or five days at home and possibly five or six in the previous month. Fettig had no designated bedroom at her parents' home and, in fact, she contends when she was in Seattle she always slept at her boyfriend's house. Under these facts, Fettig's house of usual abode was not her parents' home because she did not actually live there. Service of process was therefore insufficient under RCW 4.28.080(15).[1]
On two previous occasions, I have expressed my concern about the absence of clear principles governing service of process, specifically as to when substantial compliance may be appropriate. Union Bay Preservation Coalition, 127 Wash.2d at 624, 902 P.2d 1247 (Talmadge, J., dissenting); Weiss, 127 Wash.2d at 734, 903 P.2d 455 (Talmadge, J., concurring); see also Continental Sports Corp. v. Department of Labor & Indus., 128 Wash.2d 594, 910 P.2d 1284 (1996) (use of Federal Express substantially complies with statutory requirement to send notice of appeal by mail). The majority's disposition of this case adds yet another snare to our already perilous service of process jurisprudence.
We serve the trial courts and the practicing bar poorly when we accept review of service of process cases and decide them as if they were sui generis, free of precedent and of consistent, guiding principles. I would decide this case as Washington judges have always decided such cases, and hold service of process was insufficient because it was not accomplished in accordance with RCW 4.28.080(15) where Fettig was actually living, at her "house of ... usual abode."
DURHAM, C.J., and MADSEN, J., concur.
NOTES
[1] It is also noteworthy Sheldon had ample opportunity to effectuate appropriate personal service or other substituted service on Fettig before the expiration of the statute of limitations. There was no effort by defense counsel to hide the argument of insufficiency of service of process as the issue was raised both in the notice of appearance and in Fettig's answer. Fettig filed the notice of appearance and the answer long before the time period provided by RCW 4.16.170 expired. Also noteworthy is the time between filing of the summons and complaint (July, 9, 1992), and the time of substituted service (August 7, 1992). As most practitioners send documents out for service at the same time they send them out for filing, the length of time it took to effect the substituted service in this case suggests the process server may have encountered considerable difficulty in serving the summons and complaint.