James Harold BLITTERSDORF, d/b/a
Custom Log Homes or High Country
Homes, Appellant (Defendant),

v.

F. William EIKENBERRY,
Appellee (Plaintiff).

No. 97–321.

Supreme Court of Wyoming.

Aug. 11, 1998.

James K. Lubing of James K. Lubing Law
Office, Jackson, for Appellant(Defendant).

A. Joe Hageman, Laramie, for Appel-
lee(Plaintiff).

Before LEHMAN, C.J.,* and THOMAS,
MACY and GOLDEN, JJ., and
KALOKATHIS, D.J.

KALOKATHIS, District Judge.

James Harold Blittersdorf, d/b/a Custom
Log Homes or High Country Homes (Blit-
tersdorf), appeals a default judgment against
him in favor of F. William Eikenberry (Eik-
enberry).  Blittersdorf raises three issues:
(1) whether service of process was perfected
at his "usual place of abode;" (2) whether the
district court abused its discretion in refusing

* Chief Justice effective July 1, 1998

to set aside the default; and (3) whether the district court abused its discretion in the damage award.

We affirm.

## FACTS AND BACKGROUND

On June 13, 1997, Eikenberry filed a complaint against Blittersdorf for breach of contract. Eikenberry alleged that Blittersdorf did not complete a contract for the construction of a log home. On July 8, 1997, the clerk of court entered default against Blittersdorf for failure to file an answer or otherwise plead, and the district court entered a default judgment against Blittersdorf in the amount of $60,243.65 plus interest.

The facts surrounding service of process are as follows. On June 16, 1997, Ron Riccio (Riccio) and Joseph Morotti (Morotti) drove to the home where Blittersdorf's wife and daughter resided in Centennial, Wyoming. No one was home. As Riccio turned to leave, Mrs. Blittersdorf and her daughter arrived. Riccio asked Mrs. Blittersdorf if her husband was home, and she replied that he was not. Riccio handed Mrs. Blittersdorf a gaily decorated gift bag and advised her it was for her husband. The gift bag contained the summons and complaint.

The parties disagree as to what happened next. Riccio and Morotti testified that Mrs. Blittersdorf opened the bag and reviewed the papers for ten to fifteen seconds. Mrs. Blittersdorf testified that she did not read the papers, immediately entered her home, and burned the bag and its contents in her wood burning stove.

At the time of service, Blittersdorf was living in Jackson, Wyoming, and had been since October 1996. Blittersdorf had a one-year lease on residential property in Jackson. He maintained a post office box in Jackson and registered some of his vehicles in Jackson. His wife and daughter remained in Centennial so his daughter could complete the school year.

Blittersdorf left tools and construction equipment at the Centennial home because he intended to return to Centennial at some time to complete a construction project. In the six months immediately preceding service of process, he visited his wife and daughter at the Centennial home approximately fourteen times. Blittersdorf is the sole director and shareholder of the corporation which owns the Centennial home. He voted in an Albany County election a month prior to service of process. Blittersdorf did not leave a forwarding address at the Centennial post office. Rather, his wife would forward his mail to him in Jackson.

The complaint alleges that Eikenberry and Blittersdorf entered into a contract for the construction of a log home for $45,000.00. Blittersdorf performed part of the contract for which he was paid $30,500.00. However, he allegedly failed to complete the contract. The complaint prayed for: (1) damages in the amount of $57,676.12;[1] (2) $1,000.00 for attorney fees;[2] and (3) interest.

In support of the motion for default judgment, Eikenberry submitted an affidavit to support the default judgment in the amount of $60,243.65. The affidavit mirrored the damages claimed in the complaint.

Blittersdorf moved to set aside the default judgment pursuant to W.R.C.P. 55(c) and W.R.C.P. 60(b)(1), (3), (4), and (6), claiming he never received notice of the summons and complaint and that the judgment is void because Eikenberry had not perfected service of process, as the Centennial home was not his "usual place of abode." Additionally,

---

1. The complaint set out the $57,676.12 amount as follows:

   1. $65,663.46—the amount Eikenberry expended to complete the contract.

   2. $4,800.00—alternative housing pending completion of the contract.

   3. $9,230.42—additional interest on Eikenberry's construction loans.

   4. $14,500.00—credit for the remainder due under the contract if Blittersdorf completed the contract.

   5. $7,517.76—credit for interest on Eikenberry's permanent financing he would have incurred if Blittersdorf timely completed the contract.

2. The default judgment included $1,000.00 for attorney fees. In the order denying Blittersdorf's motions, the district court reduced the default judgment by the $1,000.00 representing attorney fees.

Blittersdorf sought a hearing on the issue of damages. Both motions were denied.

## DISCUSSION

■ Blittersdorf argues the Centennial home was not his "usual place of abode" because he was not actually living there at the time of service; therefore, the default judgment is void and must be set aside pursuant to W.R.C.P. 60(b)(4). Challenges to jurisdictional findings involve a *de novo* review of the record. *Goodwin v. Hall*, 957 P.2d 1299, 1301 (Wyo.1998). The factual findings at issue are reviewed under the clearly erroneous standard. *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3rd Cir.1993).

Wyoming case law provides little guidance into the meaning of "usual place of abode" so we turn to relevant precedents from other jurisdictions. *Sheldon v. Fettig*, 129 Wash.2d 601, 919 P.2d 1209, 1213 (1996) (*quoting Sheldon v. Fettig*, 77 Wash.App. 775, 781, 893 P.2d 1136 (1995) and *Thoenes v. Tatro*, 270 Or. 775, 529 P.2d 912 (1974)) notes:

> "The term 'usual place of abode' is used in the statute because it is the place at which the defendant is most likely to receive notice of the pendency of a suit.
> * * *
> * * * '[U]sual place of abode' must be taken to mean such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear."

■ A former residence may be the "usual place of abode" if a nexus to that residence is retained, sufficient to afford a reasonable opportunity to receive notice. In *Sheldon*, the nexus with the former residence (her parents' home) involved periodic visits and the use of her parents' address as her own. *Sheldon*, 919 P.2d at 1213. Likewise, *Van Buren v. Glasco*, 27 N.C.App. 1, 217 S.E.2d 579, 582 (1975), *rev'd on other grounds sub nom. Love v. Moore*, 305 N.C. 575, 291 S.E.2d 141 (1982) involved regular weekend visits to the family home. These cases determined that the retained nexus was likely to result in notice to the defendant. As such, the former residence qualified as the "usual place of abode."

■ The record here discloses that Mrs. Blittersdorf customarily forwarded her husband's mail to him in Jackson. In addition, Blittersdorf frequently visited the Centennial home. The district court noted in its decision letter:

> Defendant's family resided at his Centennial address. He continued to receive mail at that address which was forwarded to him by his wife. He stored property, vehicles and tools on the property in order to complete work still remaining in the Centennial area. He returned to the property on numerous occasions to visit his family. The corporation, of which he is the sole stockholder, owned and continues to own the property. He maintained his voter registration in Albany County and voted in a local election only a month before the date of service. Mrs. Blittersdorf did not advise Mr. Riccio that her husband was residing in Jackson, but that he was "not home." The Blittersdorfs were not separated or divorced and no such actions were or are anticipated.

The district court correctly concluded that service at the Centennial address was reasonably calculated to result in notice to Blittersdorf.

Blittersdorf next argues that even if service was valid, the district court erred because it did not consider "good cause" as a basis for setting aside the judgment. Good cause is not enumerated in W.R.C.P. 60(b),[3] although that concept provides grounds for

---

3. W.R.C.P. 60(b) provides, in pertinent part:
   On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake; inadvertence, surprise, or excusable neglect; (2) newly discovered evidence * * *; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied * * *; or (6) any other reason justifying relief from the operation of the judgment.

setting aside an entry of default.[4]

■ A judgment can be set aside only upon the grounds enumerated in W.R.C.P. 60(b). The district court considered excusable neglect, and determined that Blittersdorf had not proven its availability. We have carefully reviewed the evidence, and find no error in this conclusion.

■ Blittersdorf next argues that Eikenberry engaged in fraud, misrepresentation or misconduct by obtaining a default judgment in circumvention of the Wyoming Rules of Civil Procedure. Eikenberry met the requirements of W.R.C.P. 4, so he did not circumvent the rules. Moreover, a party seeking relief under W.R.C.P. 60(b)(3) must establish fraud, misrepresentation, or misconduct by clear and convincing evidence. *Fluor Daniel (NPOSR), Inc. v. Seward,* 956 P.2d 1131, 1135 (Wyo.1998). Even though the district court made no specific finding on the issue of fraud, misrepresentation or misconduct, the record does not disclose evidence of any substance tending to prove fraud, misrepresentation or misconduct. In regard to this issue, we find no error.

Finally, Blittersdorf claims the district court abused its discretion by refusing to hold a hearing on the issue of damages. W.R.C.P. 55(b) provides, in pertinent part:

Judgment by default may be entered as follows:

\* \* \*

(2) By the Court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor \* \* \*. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of

trial by jury to the parties when and as required by any statute.

■ The damages claimed were liquidated because they were "certain or, by computation, made certain," and were supported by affidavit. A hearing was not required. *Halberstam v. Cokeley,* 872 P.2d 109, 113 (Wyo. 1994).

The judgment is affirmed.

---

4. *Fluor Daniel (NPOSR), Inc. v. Seward,* 956 P.2d 1131, 1134 (Wyo.1998) determined that proof of any of the grounds enumerated in W.R.C.P. 60(b) amounts to good cause for purposes of W.R.C.P. 55(c) as it pertains to setting aside an entry of default. W.R.C.P. 55(c) provides: "For good cause. shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."