[No. 17735-1-III.   Division Three.   October 19, 1999.]

RONALD R. VUKICH, *Appellant*, v. RICHARD J. ANDERSON, *Respondent*.

*Neil E. Humphries* of *Humphries, Patterson & Lewis*, for appellant.

*Carl E. Hueber* of *Winston & Cashatt Lawyers P.S.*, for respondent.

BROWN, J. — Ronald Vukich filed a complaint in Spokane County alleging Richard Anderson converted his pickup truck and the conversion constituted the tort of outrage. An order of default and judgment was entered against Mr. Anderson. The issue is whether the trial court erred by deciding the substituted service discussed in these facts was proper. We hold it was not, reverse, and vacate the default.

## FACTS

Mr. Vukich alleges that Mr. Anderson wrongfully took his Chevrolet pickup truck. Mr. Anderson disputes any wrongdoing and offers a rational defense. On June 2, 1997, Mr. Vukich's process server left a summons and complaint with Jada Boyd at a home owned by Mr. Anderson in Nine Mile Falls. On June 27, 1997, Mr. Vukich filed his summons and complaint against Mr. Anderson in the Spokane County Superior Court. Mr. Vukich alleged both itemized property damages and unspecified outrage damage. An order of default and default judgment were immediately entered based upon the process server's claim of substituted service. The judgment included outrage damages of $250,000.

Unknown to Mr. Vukich or his process server, Mr.

Anderson had previous to the June 2, 1997 events, executed a written lease for the Nine Mile Falls residence with Ms. Boyd, a person unrelated to Mr. Anderson, for a one-year term beginning on August 4, 1996. Soon thereafter, Mr. Anderson left for California, opened a bank account, and purchased a home. Records of these transactions are part of this record. While in California, Mr. Anderson paid California sales and real estate taxes. Mr. Anderson stated he resided in California with the intent to domicile there from August 1996 until July 1997. Mr. Anderson discovered the judgment when he tried to refinance his Nine Mile Falls property. In April 1998, Mr. Anderson moved to vacate the order of default and judgment as void for lack of personal service pursuant to CR 60(b)(5).

Ms. Boyd told the process server that Mr. Anderson did not live at her leased residence. Her statement was somewhat contradicted by the process server, who stated his usual practice would not have been to serve Ms. Boyd if Ms. Boyd had told him Mr. Anderson did not live at the residence. The parties disputed whether Mr. Anderson was in town on June 2, 1997. According to Mr. Anderson and others who submitted affidavits on his behalf, he was still in California on and around June 2, 1997. Mr. Vukich submitted evidence that Mr. Anderson received mail at the Nine Mile Falls address, continued to register his car in Washington using the Nine Mile Falls address, and litigated in a Stevens County small claims court listing the Nine Mile Falls address not long before the June 2 events. In a letter to the Stevens County court, Mr. Anderson asked correspondence be sent to him in California in care of his daughter.

The trial court refused to vacate the order of default but did vacate the $250,000 outrage award. Mr. Vukich appealed the trial court's decision to vacate the $250,000 outrage award. Mr. Anderson cross-appealed the court's refusal to vacate the default order and judgment.

## ANALYSIS

The determinative issue is whether the trial court erred

by refusing to set aside the order of default and judgment and concluding it had personal jurisdiction over Mr. Anderson by substituted service under these facts.

██ The summons and complaint were left with a tenant, Ms. Boyd, at a house owned by Mr. Anderson in Nine Mile Falls. Mr. Anderson argues the house was not his "usual abode" pursuant to RCW 4.28.080(15). "A facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular." *Woodruff v. Spence*, 88 Wn. App. 565, 571, 945 P.2d 745 (1997), *review denied*, 135 Wn.2d 1010 (1998).

"Substitute service of process is effective when (1) a copy of the summons is left at defendant's house of usual abode, (2) with some person of suitable age and discretion, (3) then resident therein." *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996) (citing RCW 4.28.080(15)). The term "usual abode" is to be liberally construed to effectuate service and uphold jurisdiction of the court. *Sheldon*, 129 Wn.2d at 609. Usual place of abode means " ' "such center of one's domestic activity that service left with a family member is reasonably calculated to come to one's attention within the statutory period for defendant to appear." ' " *Id.* at 610 (quoting *Sheldon v. Fettig*, 77 Wn. App. 775, 781, 893 P.2d 1136, *review granted*, 127 Wn.2d 1016, 904 P.2d 300 (1995)). "[U]nder certain circumstances a defendant can maintain more than one house of usual abode." *Id.* at 611 (citing *Van Buren v. Glasco*, 27 N.C. App. 1, 217 S.E.2d 579, 91 A.L.R.3D 820 (1975)).

In *Sheldon*, eight months before service of process, the defendant was hired to work as a flight attendant out of Chicago. *Sheldon*, 129 Wn.2d at 604. The defendant's mailing address was in Chicago. She also had a checking account, bank cards and a health club membership in Chicago. *Id.* at 613. Nonetheless, the defendant repeatedly used her parents' residence as a place of contact after she

had moved to Chicago. Four months before she left for Chicago, the defendant was cited for speeding and gave her parents' address as her own. She listed her parents' address as her own when she registered to vote. Her car registration and auto insurance also listed this address. *Id.* at 604. She left her car with her parents and gave her father power of attorney to sell it; when he did so, the bill of sale filed with the Department of Licensing listed the Seattle address as her home. *Id.* at 604-05. The defendant also visited the residence frequently when she was in Seattle. In the month service was made, the defendant spent four or five days at the residence. *Id.* at 605. The plaintiff's attorney had previously sent the defendant a letter at her parents' address and had received a response from the defendant within four days. *Id.* at 606. Our Supreme Court held the parents' Seattle residence was the defendant's usual abode, concluding: "Since [the defendant] used the family home for so many of the indicia of one's center of domestic activity, it is fair to conclude it is a center of her domestic activity." *Id.* at 610.

In *Lepeska v. Farley*, 67 Wn. App. 548, 833 P.2d 437 (1992), the plaintiff served the summons and complaint on the defendant's mother at her residence. *Id.* at 549. On appeal, Division One held the mother's residence was not the defendant's usual abode. *Id.* at 552-53. The court explained:

> Substitute service was attempted on Farley [the defendant] at his parents' home. While Farley may or may not have been living with his parents 3 years earlier when he provided the investigating officer with that address, he avers he was not living there at the time of service. According to his affidavit, he did not live with his parents, but maintained his own household in Burien, near his job. His affidavit also states that during the summer months of 1991, he was on the road with his summer job.
>
> Under Washington case law, service on Farley at his parents' home, when he maintained his own separate home, fails to comply with the substitute service statute.

*Id.* at 551.

In *Gross v. Evert-Rosenberg*, 85 Wn. App. 539, 933 P.2d 439, *review denied*, 133 Wn.2d 1004 (1997), the defendant was involved in an auto accident with the plaintiff. On the police report, she listed her home address in Federal Way, Washington. *Id.* at 541. After the accident, she lived at the address for two and one half years until she moved to Puyallup. After she moved, the defendant and her husband remained owners of the Federal Way property that they leased to their daughter and son-in-law. The defendant notified the post office of her new address, obtained a new driver's license and notified her regular creditors of the change of address. At the time of the attempted service, she had not changed her voter registration or her property tax billing address. *Id.* The plaintiff left a summons and complaint with the defendant's son-in-law at the Federal Way house. *Id.* at 541-42.

On appeal, Division One held the Federal Way residence was not the defendant's usual abode under RCW 4.28.080(15). *Gross*, 85 Wn. App. at 542. The court reasoned:

> The inquiry is whether the Federal Way home was a center of domestic activity for Evert-Rosenberg [the defendant]. Unlike the facts in *Sheldon*, where the adult-child defendant was deemed to have more than one usual abode, one in Illinois and one at her parents' home in Washington state, here Evert-Rosenberg, the parent, moved to a new home, retaining ownership of the Federal Way house but actually residing in another abode. Although the tenants in the old home were related to Evert-Rosenberg, they had a completely different center of domestic activity. We refuse to extend the *Sheldon* holding to these facts.
>
> The facts of this case are similar to those found in *Lepeska v. Farley* where this court held that substitute service on a son through his parents' home at a time when he maintained his own separate home within the jurisdiction failed to comply with the statute.

*Gross*, 85 Wn. App. at 543 (footnotes omitted).

Here, Mr. Vukich provided inconclusive evidence in

defense of the default. When this controversy arose, the process server ran a postal check on the Nine Mile Falls address. The postal carrier confirmed Mr. Anderson's mail was delivered to this address on June 2, 1997. Furthermore, when Mr. Anderson sued in small claims court, he listed the Nine Mile Falls address on the notice of claims. These notices were filed on May 15, 1997, roughly two weeks before the service of process on Ms. Boyd. Mr. Anderson also retained his Washington driver's license. Finally, in correspondence regarding the claims, Mr. Anderson stated, "I plan to be back *home* at the end of May." (Emphasis added.) He also requested that the court send mail to him in care of his daughter at her address in California.

On the other hand, Mr. Anderson provided specific evidence that he leased his residence to Ms. Boyd for a one-year term beginning on August 4, 1996. Mr. Anderson did not stay at his Nine Mile Falls property during the term of the lease according to both Ms. Boyd and Mr. Anderson. In California, he opened a bank account and purchased a house; records offered support these facts. He paid sales and real estate taxes during his stay in California. Mr. Anderson, like the defendant in *Gross*, retained ownership of the Nine Mile Falls residence but was actually residing at another abode.

The circumstances are more like those in *Gross* than those in *Sheldon* where the defendant frequently visited her parents' residence and spent four or five days at the house during the month service was made. *Sheldon*, 129 Wn.2d at 605. Like the defendants in *Gross* and *Lepeska*, Mr. Anderson did not actually reside at the Nine Mile Falls address during the lease period. Thus, *Sheldon* is distinguishable.

Significantly, Mr. Anderson's evidence in the form of the lease, tenant's statement, California bank account, California home purchase, is not refuted. Mr. Anderson's statements are internally consistent and directly refute Mr. Vukich's evidence. In other words it is clear and convincing. On the other hand, other reasonable explanations are

readily apparent for Mr. Vukich's evidence. For example, Mr. Anderson's mail is easily forwarded to California. Many people fail to register their cars when absent from this state until notice is received or for other reasons. Many people have driver's licenses from more than one state and hold the licenses until expiration. The process server's statement detailed his usual practices not his specific recollection of the critical events. While Mr. Anderson did list his Nine Mile Falls address in the small claim's court, he also asked that his correspondence be sent to California. These illustrations highlight the ambiguous nature of Mr. Vukich's evidence.

In sum, we conclude the Nine Mile Falls residence was not the center of Mr. Anderson's "domestic activity" at the critical time. Service at that address would not be reasonably calculated to come to Mr. Anderson's attention. *Sheldon*, 129 Wn.2d at 610. Because the trial court lacked personal jurisdiction, the judgment was void. Accordingly, we hold the trial court erred by refusing to vacate the order of default. Therefore, the default judgment is set aside. It follows that we need not address Mr. Vukich's contentions related to the trial court's vacation of the outrage award.

Reversed.

KURTZ, A.C.J., and SWEENEY, J., concur.