# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TACOMA PIERCE COUNTY SMALL BUSINESS INCUBATOR, a Washington Non-Profit Corporation, d/b/a/ WILLIAM M. FACTORY, SMALL BUSINESS INCUBATOR, | No. 50439-1-II |
| Respondent, | |
| vs. | PART PUBLISHED OPINION |
| JAGUAR SECURITY, INC., a Washington Corporation; RICKY MCGHEE and "JANE DOE" MCGHEE, husband and wife, and the marital community composed thereof, | |
| Appellant. | |

MAXA, C.J. – Jaguar Security, Inc., and its owner, Ricky McGhee (collectively Jaguar),

appeal the superior court's order denying Jaguar's motion to quash a statement of arbitrability

and the superior court's judgment on an arbitration award against Jaguar in favor of the Tacoma

Pierce County Small Business Incubator (SBI).  Jaguar had filed a request for a trial de novo

after the arbitration, but the superior court ruled that Jaguar failed to properly serve the request.

Both parties had agreed to accept service by email.  Jaguar served its request for a trial de

novo only through the Legal Information Network Exchange (LINX), Pierce County Superior

Court's mandatory electronic filing system, which notified SBI's attorney in an email that she

was being electronically served with the request.  The superior court ruled that SBI's attorney

had not consented to service through LINX alone and therefore that the request for trial de novo was inadequate.

In the published portion of this opinion, we hold that the superior court erred in entering judgment on the arbitration award because Jaguar's service of its request for a trial de novo through LINX was within the agreement of SBI's attorney to accept email service. In the unpublished portion, we hold that the superior court did not err in denying Jaguar's motion to quash SBI's statement of arbitrability.

Accordingly, we reverse the superior court's judgment and remand for further proceedings.

FACTS

In February 2016, SBI filed a complaint alleging that it had a lease agreement with Jaguar and that Jaguar had failed to meet its monthly rent and other obligations. SBI alleged damages of $9,033.08 plus $1,216.89 in pre-judgment interest, for a total of $10,249.97.

In June 2016, SBI's attorney and Jaguar's attorney mutually agreed to accept service by email. An email to SBI's attorney from an office manager for Jaguar's attorney evidenced this agreement, stating, "Thank you for your acceptance to be served by email. In turn [Jaguar's attorney] will accept service by email from your office as well." Clerk's Papers (CP) at 122. In October, SBI filed a declaration of service for two pleadings stating that service was achieved "via electronic service via Pierce County LINX and email per agreement." CP at 109. SBI's attorney also emailed the pleadings to Jaguar's attorney, but she stated in the email that they had been "served via LINX as well." CP at 130.

SBI filed a statement of arbitrability to transfer the case to mandatory arbitration because its claim was under $50,000. The case proceeded to arbitration, and the arbitrator filed an arbitration award with the superior court on March 3, 2017.

On March 21, Jaguar filed a request for a trial de novo. But Jaguar did not serve SBI's attorney directly through email. Instead, SBI's attorney received an email from LINX stating that she was served with the request on March 21. When service is made through LINX, the automatically-generated email states, "The following documents are being electronically served upon you." CP at 106, 107. The email contains a link to LINX, where the party can log in and view the served documents. The email states, "If you or your authorized support staff views these document(s) from ANYWHERE on the LINX website you are considered served." CP at 106, 107.

SBI's attorney admitted that service was made through LINX. LINX records showed that SBI's attorney "accepted" service through LINX on March 24.

SBI subsequently filed a motion for judgment on the arbitration award. SBI argued that Jaguar had not properly served the request for a trial de novo because the parties did not have an agreement to accept service through LINX. Jaguar opposed the motion, arguing that SBI's attorney had agreed to service via LINX.[1]

At the hearing on SBI's motion, Jaguar acknowledged that electronic service of all other pleadings besides the request for a trial de novo had been achieved with a direct email to SBI's attorney. But Jaguar relied on the October 2016 declaration of service to argue that SBI's attorney had agreed to accept service either through direct email or LINX. SBI argued that its

---

[1] The day after SBI filed its motion, Jaguar filed a declaration of service stating that SBI's attorney had been served "via electronic service by Pierce County LINX per agreement." CP at 95.

attorney had agreed only to direct email service from Jaguar's attorney and that the October 2016 declaration of service stated that service had to be accomplished through both direct email and LINX.

The superior court concluded that SBI's attorney had agreed to electronic service through both direct email and LINX, not one or the other. The court noted that the October 2016 declaration of service was stated in the conjunctive. On that basis, the court ruled that service of the request for trial de novo was improper and entered judgment on the arbitration award.

Jaguar appeals the superior court's entry of judgment on the arbitration award.

ANALYSIS

Jaguar argues that the trial court erred in entering judgment on the arbitration award because Jaguar timely filed and properly served a request for a trial de novo through an email from LINX and SBI's attorney had agreed to accept email service. We agree.

A.    LEGAL BACKGROUND

Within 20 days after an arbitrator files an arbitration award, an aggrieved party may file a request for a trial de novo in the superior court. RCW 7.06.050(1). MAR 7.1(a) includes the same 20 day filing requirement and also requires that the requesting party serve all other parties within 20 days "in accordance with CR 5."

CR 5(b)(1) generally requires service by delivery or mail on a party's attorney. But CR 5(b)(7) also allows for service "by any other means, including . . . electronic means, consented to in writing by the person served or as authorized under local court rule."

Similarly, GR 30(b)(4) allows courts to adopt a local rule mandating electronic filing and electronic service of documents. "Electronic service may be made either through an electronic transmission directly from the court (where available) or by a party's attorney." GR 30(b)(4).

However, "[a]bsent such a local rule, parties may electronically serve documents on other parties of record only by agreement."  GR 30(b)(4).

Pierce County has adopted a general rule mandating electronic filing, Pierce County Local General Rule (PCLGR) 30.  But Pierce County has not adopted a similar rule mandating electronic service.

When determining if a party has complied with statutory service requirements, a liberal construction is appropriate as a means to give effect to the statute's purpose while upholding the statute's spirit and intent.  *See Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996) (applying liberal construction to substitute service of process statutes).  The principle of liberal construction applies to CR 5.  *See Brackman v. City of Lake Forest Park*, 163 Wn. App. 889, 895, 262 P.3d 116 (2011) (liberally construing CR 5(b)(2)(B) proof of service requirement to require substantial compliance).

B.      EMAIL SERVICE ANALYSIS

Here, SBI concedes that the parties agreed to service by email.  And there was evidence of written confirmation of that agreement.  In an email to SBI's attorney, an office manager for Jaguar's attorney stated, "Thank you for your acceptance to be served by email" and added that Jaguar's attorney also would accept service by email.  CP at 122.  Further, there is no question that electronic service through LINX involves emailing notice that pleadings have been filed and served.[2]

---

[2] Jaguar argues that the parties agreed to service through LINX simply by using the system. LINX itself contains a notice stating that if an attorney or authorized support staff views a document from anywhere on the LINX website, the attorney is considered to have been served. However, the notice also states that under GR 30, parties may electronically serve documents only by agreement.  Using LINX alone does not satisfy the agreement requirement.

SBI emphasizes that there is no evidence in the record of an express agreement to accept service through LINX only. And SBI notes that it previously had served Jaguar using email alone or both direct email and LINX, but never through LINX only. But there also is no evidence in the record that the parties agreed to accept email service only directly from the opposing attorney or expressly excluded email service through LINX.

The question here is whether a general agreement to be served by email includes service through LINX or whether such an agreement is limited to service through a direct email from the opposing attorney. No cases address this issue.

We hold that SBI and Jaguar's agreement to accept email service included service through LINX. First, the written confirmation of the agreement was broad. SBI agreed to "be served by email." CP at 122. Service through LINX involved an email to SBI's attorney stating that she had been served with the request for trial de novo, which provided a link to LINX where SBI's attorney could access an electronic version of the request. Therefore, SBI's attorney in effect was served with the request for a trial de novo by email.

Second, the written confirmation of the agreement contained no limitations on the type of email service that was required. The parties could have but did not expressly exclude electronic service through LINX (or from any other source). The parties could have but did not limit their agreement to emails sent directly by the opposing attorney attaching PDF files of the pleadings being served.[3] If a party agrees to email service but does not want to agree to email service

---

[3] SBI argues that the parties agreed to email service "with the pleadings attached as PDF files." Although the parties did serve in this manner at times, the email confirming the agreement to accept email service says nothing about attaching PDF files.

through LINX, that party must expressly exclude LINX service from the agreement to accept email service.

Third, SBI's statement in a declaration of service that pleadings had been served "via Pierce County LINX and email per agreement" and SBI's use of both LINX and direct email are not dispositive. The parties' agreement was "to be served by email." CP at 122. The declaration of service statement is ambiguous and is not inconsistent with agreeing to accept electronic service through only LINX. And the fact that SBI chose to serve through both LINX and direct email on that occasion does not mean that the parties had agreed that both methods were required.

Fourth, allowing service through LINX is consistent with the purpose underlying the agreement requirement in CR 5(b)(7): to ensure that parties have access to the method of service. Access is not a concern here, where local rules already required filing of documents through LINX and SBI actually served pleadings using LINX. PCLGR 30(b)(5). And there is no question that SBI was able to access the pleadings that Jaguar served through LINX.

Finally, ruling that service was valid in this case also is consistent with the general preference of deciding cases on their merits. *Sheldon*, 129 Wn.2d at 609. "'Modern rules of procedure are intended to allow the court to reach the merits, as opposed to disposition on technical niceties.'" *Id.* (quoting *Carle v. Earth Stove, Inc.*, 35 Wn. App. 904, 908, 670 P.2d 1086 (1983)). Here, Jaguar served SBI through LINX and SBI actually received an email from LINX stating that electronic service had occurred. Prohibiting service through LINX when the parties have agreed to service through email would emphasize procedural requirements at the expense of reaching the case on its merits.

SBI argues that even if service through LINX was proper, Jaguar failed to effect service within the 20 day period MAR 7.1(a) requires. SBI claims that the date of service through LINX is the day SBI opened the request for trial de novo in the LINX system, March 24, which is more than 20 days after the arbitrator filed the arbitration award on March 3. But CR 5(b)(7) expressly states that electronic service is effective "on transmission," not on receipt. Here, there is no question that LINX transmitted the request for trial de novo on March 21, which was within the 20 day period.

We hold that Jaguar's service through LINX was valid and timely. Therefore, we hold that the trial court erred in dismissing Jaguar's request for a trial de novo.

CONCLUSION

We reverse the superior court's judgment and remand for further proceedings.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

When SBI attempted to file the statement of arbitrability, a glitch in LINX prevented submission unless SBI first filed a confirmation of joinder. Therefore, SBI filed both documents.

On the confirmation of joinder form, SBI selected a box stating that the parties made several "joint" representations, including that the parties had cooperated in completing the report. These representations were false; SBI's counsel did not consult with Jaguar's counsel before filing the confirmation of joinder.

Jaguar did not file an objection or other response to SBI's statement of arbitrability. But Jaguar subsequently filed a motion to quash both the confirmation of joinder and statement of

8

arbitrability and sought sanctions under CR 11. Jaguar argued that the pleadings should be quashed because they were falsely sworn and requested that the case be removed from arbitration. SBI's counsel later agreed to strike the confirmation of joinder and to sign an agreed order to that effect. The superior court denied Jaguar's motion.

ANALYSIS

A.   MOTION TO QUASH STATEMENT OF ARBITRABILITY

Jaguar argues that the trial court erred by denying its motion to quash SBI's statement of arbitrability.[4]  We disagree.

1.   Legal Background

a.   Confirmation of Joinder

Pierce County Local Rule (PCLR) 19(c) requires the plaintiff to file a confirmation of joinder of parties, claims, and defenses in the format shown in PCLR Form F. The confirmation of joinder allows the plaintiff to check one of two boxes. PCLR Form F. If the first box is checked, the parties make "joint representations" regarding six issues, including that no additional claims or defenses will be raised. PCLR Form F. Another representation is that "[a]ll parties have cooperated in completing this report." PCLR Form F. If the second box is checked, the parties do not join in the representations. PCLR Form F. The plaintiff must identify which representation cannot be made or provide some other explanation. PCLR Form F.

---

[4] Jaguar also assigns error to the superior court's failure to grant its motion to quash the confirmation of joinder. But SBI always has conceded that the confirmation of joinder could be stricken. The issue on appeal is whether misrepresentations in the confirmation of joinder should have compelled the superior court to quash the statement of arbitrability.

9

Under PCLR 19(d), the plaintiff must confer with all other parties in completing the confirmation of joinder. The plaintiff must make actual contact with the attorney of record. PCLR 19(d).

However, PCLR 19(e) provides an exception to the confirmation of joinder requirement for cases subject to mandatory arbitration. If a statement of arbitrability is filed on or before the deadline for filing the confirmation of joinder, the confirmation of joinder need not be filed. PCLR 19(e).

###### b. Mandatory Arbitration

Under RCW 7.06.020(1), arbitration is mandatory for cases filed in superior court in counties that have authorized arbitration and where the sole relief sought is a money judgment. Counties may set the dollar limit of claims subject to mandatory arbitration. RCW 7.06.020(1). Pierce County Local Mandatory Arbitration Rule (PCLMAR) 1.2 provides that the limit for claims subject to mandatory arbitration is $50,000.

PCLMAR 2.1(a) addresses the filing of a statement of arbitrability:

> A party may file a Statement of Arbitrability [Form S] requesting arbitration at any time after all requirements set forth in the certificate of readiness on the Statement of Arbitrability have been met and no later than the discovery cutoff date.

The form statement of arbitrability includes a "certificate of readiness," which provides:

> The undersigned attorney certifies that:
> 1. All parties have been joined and served;
> 2. All parties have received a copy of the Case Schedule;
> 3. All answers and other mandatory pleadings have been filed and served; and
> 4. No additional claims or defenses will be raised.

PCLR Form S.

Any person who disagrees with the statement of arbitrability must serve and file a response within the greater of 7 days after receipt of the statement of arbitrability or 20 days after

service of the summons and complaint. PCLMAR 2.1(b). Upon filing of a statement of arbitrability indicating that the case is subject to arbitration, the case is transferred to arbitration unless an objection has been filed. PCLMAR 2.1(e). Once a case has been assigned to arbitration, a court will order a case returned to the trial calendar only in "extraordinary circumstances." MAR 2.2(a).

### 2. Misrepresentations in Confirmation of Joinder

SBI checked the first box on PCLR Form F, making joint representations. There is no question that by checking this box, SBI misrepresented that the parties were making "joint representations" and that all parties had "cooperated in completing this report." CP at 48. SBI also violated PCLR 19(d), which required SBI to confer with Jaguar in completing the confirmation of joinder.

But it does not follow that misrepresentations in the confirmation of joinder require that a statement of arbitrability filed at the same time be quashed. Under PCLR 19(e), SBI was not even required to file a confirmation of joinder once it filed a statement of arbitrability. Jaguar cites no authority for the proposition that misrepresentations in a confirmation of joinder can somehow affect the validity of a statement of arbitrability.[5]

We hold that SBI's misrepresentations in the confirmation of joinder do not support quashing SBI's statement of arbitrability.

### 3. Statement of Arbitrability

Jaguar argues that SBI falsely certified in the statement of arbitrability that the case was ready for arbitration. Jaguar claims that SBI's assertion in the statement's certificate of readiness

---

[5] Jaguar requested sanctions under CR 11 for SBI's misrepresentations in the confirmation of joinder. The superior court did not impose sanctions. Jaguar does not assign error to that decision.

that no additional claims or defenses would be raised was incorrect because Jaguar was still conducting discovery about additional defenses, parties, and potential counterclaims.

However, unlike for the confirmation of joinder, the certificate of readiness in the statement of arbitrability does not involve *joint* representations. Instead, the party requesting arbitration is providing *that party's* certification that the case is ready to be submitted to arbitration. In other words, the requesting party is stating its belief that the case is ready for arbitration.

Here, Jaguar challenges SBI's certification that no additional claims or defense would be raised. But there is no indication in the record that SBI did not believe that statement to be true. Over four months had passed since SBI filed the lawsuit and Jaguar had not asserted any additional claims or defenses. Therefore, Jaguar's claim that SBI falsely executed the certificate of readiness has no merit.

Further, if Jaguar disagreed with SBI's statement of arbitrability, including the certificate of readiness, PCLMAR 2.1(b) required Jaguar to file an objection within seven days after the statement of arbitrability was received. Jaguar failed to do so. Because no timely objection to the statement of arbitrability was filed, the case was automatically transferred to arbitration. PCLMAR 2.1(e). Jaguar did not show any "extraordinary circumstances," MAR 2.2(a), requiring the superior court to return the case from the arbitration calendar to the trial calendar.

Accordingly, we hold that the trial court did not err in denying Jaguar's motion to quash the statement of arbitrability.

B.    ATTORNEY FEES ON APPEAL

SBI requests that we award it attorney fees as the prevailing party on appeal under RCW 4.84.330 and MAR 7.3.

Under RCW 4.84.330, in actions on a contract or lease that specifically provide that attorney fees and costs are awarded to one of the parties, the prevailing party is entitled to reasonable attorney fees and costs. SBI and Jaguar's lease agreement includes a provision stating that the prevailing party is entitled to actual attorney fees and costs. MAR 7.3 provides that the court shall assess costs and reasonable attorney fees against a party who appeals an arbitration award and fails to improve the party's position on the trial de novo. The same rule applies as a basis for an attorney fee award on appeal from the superior court. *See Hernandez v. Stender*, 182 Wn. App. 52, 62, 358 P.3d 1169 (2014).

But SBI is not the substantially prevailing party on appeal – we are reversing the judgment in SBI's favor. Therefore, SBI is not entitled to attorney fees.

Jaguar requests that we award attorney fees on appeal if we conclude that a CR 11 violation occurred. However, as discussed above, the superior court did not find a CR 11 violation and Jaguar does not appeal that ruling. Accordingly, we deny Jaguar's request for attorney fees. Jaguar does not request attorney fees under the lease agreement.

CONCLUSION

We reverse the trial court's entry of judgment on the arbitration award and remand for further proceedings.

_____
MAXA, C.J.

We concur:

_____
JOHANSON, J.

_____
SUTTON, J.