
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 39451-4-III |
| DEVIN CHRISTOPHER KIENOW, | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| TERESA A. DITTENTHOLER KIENOW, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — This case concerns a post-dissolution dispute between Devin Kienow and Teresa Dittentholer[1] involving two primary issues: Kienow's alleged failure to pay his court-ordered share of their children's private school educational expenses and his retention of Dittentholer's phone, which he believes contains evidence relevant to the children's custody.

The trial court found Kienow in contempt for failing to pay the educational expenses and ordered him to return the phone. Kienow appeals this order, and the order denying revision, raising four main arguments: (1) the trial court lacked jurisdiction or

---

[1] The final dissolution order changed the respondent's name from Teresa Dittentholer Kienow to Teresa A. Dittentholer.

authority to hear the contempt motion, (2) the court erred by failing to preserve potential criminal evidence on Dittentholer's phone, (3) Dittentholer abused the ex parte process, and (4) Dittentholer should be sanctioned for bad faith litigation.

Dittentholer argues that the trial court properly exercised its jurisdiction, reasonably found Kienow in contempt, and correctly denied his motion to view the contents of the phone. Dittentholer also opposes Kienow's request for sanctions, contending his appeal is frivolous and requesting attorney fees incurred in responding.

We affirm and grant Dittentholer's request for reasonable attorney fees.

BACKGROUND

Devin Kienow and Teresa Dittentholer were married and have two children. Their dissolution was finalized on June 15, 2021.

As part of the dissolution, Kienow and Dittentholer were ordered to pay a proportionate share of the children's educational expenses. Kienow has not made any payments toward this expense since March 2021, which were applied to the 2020-21 school year.

In May 2022, Dittentholer allowed her son to use her cell phone, which he accidentally brought to Kienow's home without her permission. While searching his son's backpack, Kienow found the phone and confiscated it.

When Dittentholer requested the phone's return, Kienow refused. Instead, Kienow, who was still represented by an attorney at the time, emailed a "Letter to

Preserve Evidence" to Dittentholer's attorney, claiming the phone contained evidence that needed to be preserved. Clerk's Papers (CP) at 186-89. After an exchange of emails, Kienow emailed Dittentholer's attorney directly and indicated that he was now representing himself and could be reached at a certain email address.

On August 17, Dittentholer filed a motion for contempt, seeking enforcement of Kienow's obligation to pay his share of the children's educational expenses and the return of her phone and the children's passports. She obtained an order to show cause, setting a hearing for September 7, 2022.[2]

Dittentholer served Kienow using several methods. Someone from Dittentholer's attorney's office attempted to serve Kienow with the motion and order sometime before August 23, leaving copies at his front door. Copies were also mailed to Kienow on August 31. Dittentholer also hired a process server to personally serve Kienow with the contempt hearing documents. The process server first tried, unsuccessfully, to serve Kienow at his home on August 27, noting that it appeared "abandoned." The process server commented that there were security cameras by the front door and facing the driveway, and the court documents were still lying on the doorstep. The process server spoke to a neighbor the next day, who confirmed that Kienow still lived at the residence.

---

[2] A copy of this order is not included in the record.

On August 30, the process server pulled into the children's school parking lot behind Kienow, but Kienow drove away quickly in what the process server characterized as an attempt to avoid being served. The process server walked to the other school parking lot where Kienow had parked and personally served him with the order to show cause, the motion for contempt, and Dittentholer's declaration.

On September 1, Kienow filed a pro se objection to the show cause hearing with the court. He acknowledged being personally served, denied trying to evade service, and moved the court to strike the hearing because he was not served at least 14 days before the hearing.

In response to Kienow's objection to the timing of the show cause hearing, Dittentholer obtained an amended order to show cause, moving the hearing to September 15. Dittentholer mailed the amended show cause order to Kienow on September 1, using the address provided by Kienow.

On September 12, Kienow filed another pro se objection, asking the court to strike the September 15 hearing, arguing that the court lacked personal jurisdiction because he was not personally served with the amended order to show cause. Alternatively, he argued that he still had not received 14-days notice of the new hearing date.

On September 15, Dittentholer sought and obtained an ex parte order allowing her to serve future documents on Kienow by email, claiming service by email would be as effective as service by mail and also alleging that Kienow had been evading service. The

court found that Kienow was evading service, authorized email service, and renoted the show cause hearing for September 30. The court also ordered Kienow to immediately return the phone and Dittentholer's passport. Dittentholer also requested that the court impose attorney fees against Kienow for his intransigence.

That same day, Kienow filed an objection to the order authorizing service by email. He continued to argue that the new order to show cause must be personally served and asked for sanctions, alleging Dittentholer's motion to serve by email was made in bad faith.

Kienow also filed two motions. The first was a "Motion To Vacate" the order authorizing email service, arguing that Dittentholer should be sanctioned for abusing the court process by obtaining the order to show cause in ex parte without there being an emergent need for it. The second was a "Motion for Order of Protection of Evidence," requesting the court order Dittentholer to protect the phone's data from being destroyed and allow Kienow to view the phone's contents. In a sealed declaration, he alleged that the phone contained inappropriate content.

On September 21, Dittentholer filed a second contempt motion, asserting that Kienow had failed to immediately return her phone and passports as directed by the court's September 15 order. Dittentholer also responded to Kienow's motions.

On September 27, Kienow filed a response to the motion for contempt, arguing that the court did not have authority to authorize email service and that the court lacked

5

personal jurisdiction over him because he had not been personally served. He acknowledged receipt of the emailed show cause order on September 15.

At the September 30 show cause hearing, the trial court concluded that it had personal jurisdiction over Kienow. The court then denied Kienow's motion to vacate, finding that Kienow had notice of the motion and hearing and that the court had authority to waive service rules and authorize alternative service on a case-by-case basis. The court noted its earlier finding that Kienow was evading service and emphasized that Kienow had filed pleadings related to the motion and hearing, demonstrating his knowledge of them.

Turning to the issue of Dittentholer's phone and passport, the court heard arguments from both parties. The court ordered Dittentholer not to delete anything from the phone but directed Kienow to return the phone and passport to Dittentholer's attorney.

The court then addressed the motion for contempt. Ultimately, the court found Kienow in contempt for failing to pay educational expenses, imposed a $100 civil penalty, and granted attorney fees and costs to Dittentholer, reserving the determination of the specific amount.

Kienow subsequently filed a motion for revision, arguing, in part, that the commissioner erred by denying his motion to vacate the order authorizing email service

and declining to sanction Dittentholer for her alleged misuse of the ex parte process. The trial court denied the motion.

Between the time he filed his motion for revision and the trial court's decision on that motion, Kienow also filed a motion to view the phone and requested sanctions against Dittentholer for "destroying evidence." CP at 197. The trial court eventually entered an order continuing Kienow's motion to view the phone's contents until January 18, 2023. The trial court also found Kienow to be intransigent for evading service, requiring Dittentholer to move for an order for alternative service, failing to immediately return the phone after the September 30 hearing, and requiring a new motion for contempt and hearing to be ordered again.

Kienow timely appealed the orders denying his motion to vacate, finding him in contempt, and denying his motion for revision.

*Post Appeal Procedure*

While this appeal was pending, the trial court held a hearing on January 18, 2023, regarding Kienow's motion to view the phone's contents.[3] Following the hearing, the court denied Kienow's motion, ordering the phone to be released to Dittentholer without restrictions. The court found that there was no pending action for a modification of the

---

[3] A copy of this hearing transcript is not in the record. We denied Kienow's motion to supplement the record with this transcript because he did not appeal the order that resulted from this hearing. *See* Letter Ruling, *In re Kienow*, No. 39451-4-III (Wash. Ct. App. Jan. 24, 2024).

parenting plan to support an order or to allow Kienow to view the phone's contents. Kienow did not appeal this order.

During the same hearing, Dittentholer's attorney filed a new motion for a contempt hearing against Kienow based, in part, on Kienow's continued failure to pay his portion of the children's educational expenses. The court granted the motion, set a hearing, and issued an order to show cause. Dittentholer's attorney personally served Kienow with the motion and order. Kienow filed a response arguing, in part, that he could not pay.

Following the second show cause hearing,[4] the trial court again found Kienow in contempt for failing to pay his portion of educational expenses and entered a judgment detailing the amounts owed and attorney fees. In support of its order, the court found that Kienow was able, but unwilling, to comply with the orders to pay. The court found that Kienow "failed to make any payment of the ordered amounts," failed "to demonstrate what steps he [took] to address his financial situation," and that, based on his financial declaration "he has not shown a lack of ability [to pay]." CP at 208. Kienow did not appeal this order.

---

[4] A copy of this hearing transcript is not in the record, presumably because the contempt order that resulted from this hearing was not appealed.

No. 39451-4-III
*In re Marriage of Kienow*


ANALYSIS

1.  MOOTNESS

As a threshold issue, Dittentholer argues that Kienow's appeal is moot because Kienow did not appeal the February 2, 2023 contempt order, which stands independent of the first contempt order. We disagree and conclude that this issue is not moot.

We typically refrain from addressing moot issues. *State v. Hunley*, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). An issue is moot when we are unable to provide effective relief. *Id.*

Although the court entered a subsequent order finding Kienow in contempt for failing to pay the educational expenses, which Kienow is not appealing, the first order of contempt included a $100 civil penalty and awarded Dittentholer her attorney fees. Were we to find in favor of Kienow, we could provide relief in the form of reversing the imposition of these financial consequences.

2.  PERSONAL JURISDICTION

Kienow argues that the trial court erred in determining it had personal jurisdiction over him. He contends that personal service of all the motion documents was required each time Dittentholer rescheduled the hearing and the superior court abused its discretion in authorizing substitute service by email. He requests that we vacate the contempt orders as void due to lack of jurisdiction.

9

Contrary to Kienow's assertions, the trial court had personal jurisdiction over him. A trial court obtains in personam jurisdiction upon the initial service of process, and the court's jurisdiction continues through a trial on the merits and through supplemental proceedings such as a motion for contempt. *State v. Ralph Williams' N. W. Chrysler Plymouth, Inc.*, 87 Wn.2d 327, 331-32, 553 P.2d 442 (1976); *see also* RCW 26.18.040 (The trial court retains jurisdiction over child support enforcement proceedings until the obligor satisfies his support obligations). While RCW 26.18.050(2) requires an order to show cause to be personally served on the other party, RCW 26.18.050(5) explicitly states that jurisdiction is continuing as provided in RCW 26.18.040.

In this case, the trial court obtained personal jurisdiction over Kienow when he was served with the petition for divorce, and the court retained jurisdiction over Kienow to enforce the child support order under RCW 26.18.040(3). Because the court retained jurisdiction over Kienow, his arguments that the court's orders are void for lack of jurisdiction fail.[5]

3. FAILURE TO PERSONALLY SERVE

Beyond the jurisdiction argument, Kienow raises several technical arguments challenging the sufficiency of service upon him. In evaluating these claims, we keep in

---

[5] Given our conclusion that the trial court had personal jurisdiction over Kienow for the contempt motion, we need not address his additional jurisdictional arguments, including that his appearance at the show cause hearing did not establish jurisdiction and mere notice of the hearing was insufficient.

10

mind the preference to address cases on the merits. *See Tacoma Pierce County Small Bus. Incubator v. Jaguar Sec., Inc.*, 4 Wn. App. 2d 935, 943, 424 P.3d 1247 (2018). While service of process is required, the purpose of service is to fulfill the due process requirements of notice and an opportunity to be heard. *Spencer v. Franklin Hills Health-Spokane, LLC*, 3 Wn.3d 165, 170, 548 P.3d 193 (2024). As such, service statutes are "to be liberally construed . . . 'to effectuate [this] purpose . . . while adhering to its spirit and intent.'" *Id.* (quoting *Sheldon v. Fettig*, 129 Wn.2d 601, 607, 919 P.2d 1209 (1996)).

Kienow argues that personal service of the order to show cause and supporting document was required. We agree. RCW 26.18.050(2) mandates that the order to show cause be served personally or "in the manner provided in the civil rules of superior court or applicable statute." Here, Kienow acknowledged that he was personally served with the first order to show cause and supporting documents. He then filed an objection to the timing of the hearing with the court. Despite his claim to the contrary, his objection to the timing of the hearing is not the same as objecting to the manner of service. *See Sammamish Pointe Homeowners Ass'n v. Sammamish Pointe LLC*, 116 Wn. App. 117, 120-121, 64 P.3d 656 (2003). Kienow did not claim that the personal service upon him was defective.

Kienow's argument implies that RCW 26.18.050(2) requires personal service of any amended orders to show cause. We disagree. The initial order to show cause was the "process," and Kienow was personally served with this process. After being

11

personally served Kienow filed an objection with the court. His response qualified as his appearance in the matter. RCW 4.28.210. Once Kienow appeared in the action, opposing counsel could serve any subsequent documents by mail. CR 5(b)(2). Thus, it was appropriate for Dittentholer's attorney to mail Kienow notice of the first amended order to show cause renoting the hearing to September 15.

Kienow next contends that the superior court erred by allowing substitute service of process by email and disputes the finding that he was evading service. We note that the court was not authorizing email service in lieu of personal service. At the point in time when the court authorized email service, Kienow had already been personally served and had appeared in the action. The court authorized service by email in lieu of service by mail. Kienow fails to demonstrate that an order authorizing email service in lieu of mail service under CR 5(b) is an abuse of discretion.

Finally, Kienow argues that service by email was ineffective because the emailed documents he received did not include all of the documents submitted in support of the third order to show cause. Specifically, Kienow contends that the email did not include the motion for contempt or declaration in support of contempt. Kienow does not deny that he was personally served with these documents on August 30. Instead, he argues that a hyper-technical reading of the order to show cause statute required Dittentholer to re-serve all of the supporting documents on him even when these documents did not

12

change. In light of our preference to address cases on the merits and liberally construe the service statutes, we disagree.

Kienow's procedural arguments fail. He was personally served with the initial show cause order and filed his objections with the court, thereby appearing in the action. He acknowledged receiving notice of the hearing dates and supporting documents in his various objections, responses, and motions. Kienow also attended the hearing, demonstrating that he had sufficient notice of the hearing.

4.   CONTEMPT FINDING

Kienow argues the trial court erred in finding him in contempt for claiming that his inability to pay does not constitute intentional disobedience of a court order. We review a finding of contempt for an abuse of discretion. *State ex rel. Shafer v. Bloomer*, 94 Wn. App. 246, 250, 973 P.2d 1062 (1999). We will uphold a finding of contempt on review if we find that the order is supported by a proper basis. *State v. Hobble*, 126 Wn.2d 283, 292, 892 P.2d 85 (1995).

A trial court is permitted to use a contempt action to enforce a child support obligation until the obligor satisfies all duties of support. RCW 26.18.050(5). If the obligor contends at the [show cause] hearing that he or she lacked the means to comply with the support or maintenance order, the obligor [must] establish that he or she exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself or herself able to comply with the court's order." RCW 26.18.050(4).

13

In this case, the trial court did not abuse its discretion in finding Kienow in contempt for "failing to pay his proportionate share of school costs." CP at 87. During the contempt hearing, Kienow's only argument was that he did not have the money to pay. He offered no evidence or argument to show that he exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering himself able to comply with the court's order to pay. Thus, the trial court's decision to find him in contempt for failure to pay his share of the children's educational expenses was supported by RCW 26.18.050 (4), (5) and was, therefore not an abuse of discretion.

Kienow's argument that his inability to pay does not rise to the level of intentional disobedience of a court order is also without merit. As discussed above, a court is permitted to find a party in contempt for failing to pay his child support obligations based on an inability to pay unless the party establishes that they exercised due diligence in seeking employment, in conserving assets, or otherwise in rendering themselves able to comply with the court's order. RCW 26.18.050(4). Because Kienow failed to show such diligence, the contempt finding was not an abuse of discretion.

5. PROTECTIVE ORDER

Kienow argues the trial court should have kept the protective order for the phone in place and should not have ordered the phone be returned to Dittentholer. Dittentholer contends that we should decline review of this issue because Kienow failed to appeal the order denying his motion to view the phone's contents. We agree with Dittenholer.

14

*A. Additional Facts*

At the September 30, 2022 hearing, the court ordered Dittentholer not to delete anything from the phone, but also ordered Kienow to return the phone. The court's order allowed Kienow 45 days to request to view certain information on the phone. On November 14, 2022, Kienow moved the trial court for an order allowing him to view the phone's contents. Following a hearing on January 18, 2023,[6] the trial court denied Kienow's motion, reasoning that there was no pending petition for modification or adequate cause order to justify granting the motion. The court also ordered the phone, which had been held in a safe at Dittentholer's attorney's office, be released to Dittentholer.

*B. Analysis*

Dittentholer argues that we should dismiss this claim because Kienow did not appeal the order denying his motion and releasing the phone. We agree.

Kienow failed to amend his notice of appeal to include the order releasing the phone to Dittentholer. As such, this issue is not properly before this court for review.

---

[6] Kienow cites to the transcript from this hearing to support this argument. However, we specifically denied Kienow's motion to supplement the record with the transcript of this hearing. *See* Letter Ruling, *In re Kienow*, No. 39451-4-III (Wash. Ct. App. Jan. 24, 2024).

*See* RAP 5.3(a)(3) (The notice of appeal must designate the decision that the party wants the court to review). Accordingly, we decline review of this issue.

Moreover, this issue is essentially moot because we cannot provide effective relief. *Hunley*, 175 Wn.2d at 907. Kienow cites to no authority that would permit us to order Dittentholer to turn over the phone so that he could review its contents. Kienow acknowledges, in his brief, that he could find no authority on this issue.

Last, Kienow's argument that Dittentholer's failure to preserve evidence should give rise to the legal presumption that the evidence would be harmful to her case is without merit. Kienow argued that the alleged felony evidence he viewed on the phone would be relevant to a modification of the parenting plan. However, Kienow never filed any action to modify the parenting plan, as the trial court recognized in its order denying Kienow's motion to view the contents of the phone.

6. DITTENHOLER'S USE OF EX PARTE

Kienow argues Dittentholer abused the ex parte process and that the trial court should have rejected Dittentholer's request for an order requiring Kienow to return her phone. He contends that the motion was not an emergency and that ex parte proceedings should not be used to "adjudicate[ ] property." Br. of Appellant at 41-45. In response, Dittentholer asserts that the ex parte process was authorized by statute to initiate contempt proceedings and that the trial court addressed ownership of the phone during

16

the September 30 hearing, where Kienow was present and had an opportunity to argue.

We agree with Dittentholer.

First, Kienow provides no legal authority to support his claim that ex parte

proceedings are reserved solely for emergencies. Nevertheless, RCW 26.18.050(1)

explicitly allows a party to use the ex parte process to obtain a show cause order, which is

exactly what Dittentholer did here.

Second, contrary to Kienow's argument, the trial court did not improperly

"adjudicate[ ] property" at the ex parte hearing. Rather, the court resolved the issue of

phone ownership during the September 30 show cause hearing based on the parties'

arguments and briefing. Kienow was present at the hearing, submitted briefing, and

argued his position, meaning he was afforded due process.

Finally, this issue is moot because there is no relief that this court could grant

Kienow. *See Hunley*, 175 Wn.2d at 907. Since Kienow failed to appeal the trial court's

later order requiring him to return the phone to Dittentholer, we cannot disturb that

ruling.

7. BAD FAITH LITIGATION CONDUCT

Kienow challenges the trial court's refusal to find that Dittentholer engaged in bad

faith litigation conduct. He requests sanctions against Dittentholer for alleged bad faith

conduct, seeking an award of appellate costs under RAP 18.1 and RCW 26.09.140.

Dittentholer argues that the trial court acted within its discretion in declining to sanction her and urges us to deny Kienow's request for attorney fees. We agree with Dittentholer.

*A. Additional Facts*

Kienow requested the trial court impose CR 11 sanctions against Dittentholer in his motion to vacate the order authorizing email service. He argued that Dittentholer should be sanctioned for abusing the court process by obtaining the show cause order in ex parte without there being an emergent need for it, for being "untruthful" about his evasion of service, and for Dittentholer's attorney's failure to know that email service was improper. During the hearing on the motion, Kienow reiterated these same arguments in support of his sanctions request. The trial court ultimately denied Kienow's motion to vacate the email service order but did not explicitly address his request for CR 11 sanctions.

*B. The Trial Court's Decision to Deny Kienow's Motion for CR 11 Sanctions*

Kienow assigns error to the trial court's failure to find that Dittentholer engaged in bad faith litigation conduct. We conclude that the trial court did not abuse its discretion when it denied his motion for CR 11 sanctions.

We review a trial court's ruling on a motion for CR 11 sanctions for an abuse of discretion. *Watness v. City of Seattle*, 11 Wn. App. 2d 722, 735, 457 P.3d 1177 (2019). "The trial court abuses its discretion where its conclusion was the result of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons."

*Id.* at 736. We can affirm a trial court's sanctions award on any basis supported by the evidence. *Id.*

The trial court's decision to not sanction Dittentholer was not manifestly unreasonable. As discussed above, it was not error for the trial court to conclude that it had jurisdiction over Kienow for the contempt proceedings. Moreover, Kienow fails to show that Dittentholer abused the ex parte process as the contempt statute specifically contemplates the use of ex parte. RCW 26.18.050(1). And, although not the subject of this appeal, the trial court later made explicit findings that Kienow was intransigent for his actions related to these contempt proceedings for causing Dittentholer to have to bring a motion for alternative service, for failing to return the phone, and for requiring a new contempt motion. Therefore, it was tenable for the trial court to deny Kienow's motion for CR 11 sanctions against Dittentholer.

Kienow argues that Dittentholer's requests for "past due" tuition before the school year started and for her passport amounted to sanctionable bad faith. However, Kienow failed to raise these issues in the trial court to allow the trial court to correct any potential errors or develop a record on them. Accordingly, we decline to review these arguments. RAP 2.5(a).

Kienow contends Dittentholer acted in bad faith by attempting to modify child support obligations without complying with the modification statutes. This argument fails. Dittentholer commenced *contempt proceedings* based on Kienow's failure to

19

comply with the child support order and pay his portion of the children's educational expenses. Contempt proceedings to enforce a child support obligation are different than a petition to modify a child support order. *Compare* RCW 26.09.175 *with* RCW 26.18.050.

### C. *Kienow's Request for Appellate Costs*

Kienow requests that we sanction Dittentholer and her attorney by awarding him his appellate costs under RAP 18.1 and RCW 26.09.140.[7] For the same reasons we conclude that the trial court did not abuse its discretion in declining to sanction Dittentholer. We deny Kienow's request for his costs on appeal.

## 8. DITTENTHOLER'S REQUEST FOR ATTORNEY FEES ON APPEAL

Dittentholer requests we award her appellate attorney fees for having to respond to a frivolous appeal. We grant her request.

RAP 18.9(a) authorizes this court, on its own initiative or on motion of a party, to order a party or counsel "who files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." "Appropriate sanctions may include . . . compensatory damages, [or] an award of attorney fees and costs [on appeal] to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008).

---

[7] In dissolution proceedings, this court may, "in its discretion, order a party to pay for the cost to the other party of maintaining the appeal." RCW 26.09.140.

No. 39451-4-III
*In re Marriage of Kienow*

An appeal is considered frivolous if, after examining the entire record, we determine that it "presents no debatable issues upon which reasonable minds might differ" and is "so devoid of merit that there is no possibility of reversal." *Advocs. for Responsible Dev. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010).

Here, all of Kienow's arguments lack substantive merit. Given that his appeal raises no debatable issues and presents no possibility of reversal, we conclude that it is frivolous. Accordingly, we grant Dittentholer's request for appellate attorney fees under RAP 18.9(a).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, C.J.

21